Cheryl L. **THOMPSON** and Mary Claude **Thompson**, Appellants,

v.

**DELOITTE & TOUCHE, L.L.P.,** Herbert E. **Noack,** Jr., and Christopher B. **Parsons,** Appellees.

No. 01–94–00444–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 11, 1995.

.

Edward D. Urquhart, Silvia T. Hassell, Houston, for appellants.

O. Clayton Lilienstern, Gregg C. Laswell, James E. Myers, Laura Eastman, Houston, for appellees.

Before COHEN, HEDGES and TAFT, JJ.

## OPINION

COHEN, Justice.

Appellants are the daughter and widow of James R. Thompson. When they learned, after his death, that he had secretly changed his will two months before his death, they sued appellees, Mr. Thompson's accountants, for helping him do so and for not telling them about the changes. They contend that if they had known Mr. Thompson intended to change his will, they could have stopped him. There is no right to stop anyone from changing his will. Consequently, we agree with the judge and the jury that appellants should take nothing. We affirm.

James R. Thompson was the president and majority shareholder of Warren Electric Company. Deloitte & Touche, or one of its predecessor firms, first began performing accounting work for Mr. Thompson around 1965; and appellee Herbert E. Noack, Jr., a partner in Deloitte, first began working on Mr. Thompson's matters in 1978.

By 1989, Mr. Thompson had accumulated a multimillion-dollar estate, and was concerned to preserve it for the benefit of his family and, particularly, for his two grandchildren. In 1989, Mr. Thompson met with Noack, attorney Don Fizer, and a stockbroker.

They discussed some changes to his 1986 will. Milton McCollough, Mr. Thompson's attorney, drafted a new will.

The new will made three significant changes to Mr. Thompson's 1986 will. First, under the 1986 will, Cheryl L. Thompson would have owned a majority interest in Warren Electric; but under the 1989 will, the stock was to be held in trust for her for her lifetime, and then pass to her children. Second, the 1989 will provided that "no member of my family or anyone related to me serve as the president or chief executive officer of Warren Electric Company." Third, the 1989 will included an *in terrorem* provision.

Noack and appellee Parsons, another Deloitte partner, suggested language affecting taxation. After Fizer concurred, Mr. Thompson executed the new will, on August 10, 1989. At Mr. Thompson's request, appellees told no one, including appellants, about the changes.

Mr. Thompson died on October 10, 1989, at age 83. Two days later, the will was read to appellants. They were disappointed.

The 1989 will was admitted to probate on October 24, 1989, and two years later, the statutory period[1] for contesting that will elapsed without any contest. In May 1992, however, appellants obtained a copy of Mr. Thompson's 1986 will, and shortly thereafter, on July 29, 1992, they filed this suit. Before trial began, appellants dismissed all their claims against Williams, McCollough, and McCollough's firm. The trial court directed a verdict for Parsons on all claims, and for Noack and Deloitte on specified claims.[2] The jury found against appellants on all theories submitted,[3] and the trial court entered a take-nothing judgment.

In point of error seven, appellants contend they established as a matter of law that appellees tortiously interfered with their inheritance rights.

When the probate court admitted the 1989 will to probate, it necessarily found that Mr. Thompson signed the will with testamentary capacity, and that it reflected his intent, was not the result of coercion or undue influence, and was valid. *See* TEX. PROB.CODE ANN. art. § 88 (Vernon 1980) (a will may not be admitted to probate unless it is first found that the declarant had testamentary capacity). Two years later, when the statutory period for contesting that will elapsed without any contest, those findings became unappealable and final. *Neill v. Yett,* 746 S.W.2d 32, 35 (Tex.App.—Austin 1988, writ denied). As a matter of law, the final probate court judgment bars any claim that appellees tortiously interfered with any "inheritance expectancy" because, in light of the final and valid probate court judgment, appellants had no inheritance expectancy. *Id.*

Appellants recognize that this case is not a will contest; they do not challenge the 1989 will. Instead, appellants contend the accountants had a duty to tell them that Mr. Thompson intended to change or had changed his will. As damages, they seek what they would have received under the 1986 will.

Appellants' straightforward complaint is that appellees should have told them Mr. Thompson was changing his will so that they could have stopped him. We hold that the appellees had no such duty; instead, they had a fiduciary duty to Mr. Thompson not to reveal his confidences, and they complied with that duty.

There is no cause of action in Texas for the lost opportunity to prevent someone from changing his will. The accountants' acts, as a matter of law, did not injure appellants.

Point of error seven is overruled.

In points of error four and eight, appellants contend that they conclusively established their right to recover for breach of fiduciary duty and that the jury's findings

---

1. *See* TEX.PROB.CODE ANN. § 93 (Vernon 1980).

2. The trial court granted a directed verdict on appellants' claims for "breach of fiduciary duty by reason of self-dealing and actual or constructive fraud," violation of the DTPA, civil conspiracy, and negligent misrepresentation.

3. The claims submitted to the jury were for "breach of fiduciary duty by reason of conflict of interest and tortious interference with inheritance rights and *actual or constructive fraud*" and negligence and gross negligence.

were against the preponderance of the evidence. They complain about questions 2A through D, in which the jury answered "no" to the question, "Did the breach, if any, of the fiduciary relationship . . . cause damage to [appellants]?"

■ Point eight asserts that appellants proved as a matter of law that they were damaged by appellees' breach of fiduciary duty. Appellants did not show they were damaged. They concede, as they must, that Mr. Thompson knew what he was doing, did what he wanted to do, and had a right to do what he did with his property. It was, after all, his will and his property. Appellees were following Thompson's directions; Thompson was not following theirs. Appellees did not injure appellants by helping Thompson do what he had a right to do or by keeping his confidences. Even if appellees had a duty to tell appellants what Mr. Thompson was doing or to decline to help him, no evidence shows that he would not have found others to help him achieve a goal he was entitled to achieve. Nor is there evidence that appellants could have changed his mind.

Point of error eight is overruled.

Point four asserts that appellants proved a breach of fiduciary duty as a matter of law. Even if they did, the jury could have still answered "no" upon finding that the breach caused no damage. Because point four does not attack that part of the compound question asked in questions 2A through D, appellants are not entitled to relief.

Point of error four is overruled.

■ In point of error five, appellants contend they proved as a matter of law their claim for fraud by concealment or failure to disclose, and that the jury's answers to questions 5A through D were against the preponderance of the evidence.

In question 5, the trial court instructed the jury as follows:

Fraud by concealment or failure to disclose occurs when—

a. a party conceals or fails to disclose a material fact within the knowledge of that party,

b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth,

c. the party intends to induce the other party to take some action or to take no action by concealing or failing to disclose the fact, and

d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

We have previously held that appellees had a duty to refrain from disclosing what Mr. Thompson told them not to disclose. Thus, item "a" was not proved; the "concealment or failure to disclose" in item "a" must be *wrongful* to be actionable. Similarly, we have previously held also that appellants suffered no injury as a result of acting without knowledge of the undisclosed fact. Thus, item "d" was not proved. Again, we know of no right to dissuade a testator from changing his will.

Point of error five is overruled.

■ In point of error six, appellants contend that they proved as a matter of law that there was an accountant-client relationship and that the jury's findings to the contrary in questions 6A through D were against the preponderance of the evidence.

Question number six stated:

You are instructed that an account-client relationship exists only if the accountant has agreed, expressly or impliedly, to render accounting services *of a specified nature* to the person claiming such a relationship.

A. At the time in question, was Cheryl L. Thompson a client of Herbert E. Noack, Jr. *with respect to the matter in dispute*?

(Emphasis added). The jury was asked whether either Cheryl or Mary Claude Thompson had an accountant-client relationship with either Noack or Deloitte. It answered "no" to all four questions.

The jury was instructed to find a relationship only if appellees agreed to render accounting services "of a specified nature" and that the specified nature must be "with respect to the matter in dispute." Thus, the

question is whether appellants showed that appellees had agreed to render to them accounting services of a specified nature with respect to Mr. Thompson's estate. The record supports the jury's negative answer.

Before Mr. Thompson's death, neither appellant was a client of any appellee except for the purpose of preparing their federal income tax returns and related tax services, all of which was requested and paid for by Mr. Thompson or Warren Electric. Before Mr. Thompson's death, appellees rendered no estate planning advice to either appellant. This constitutes sufficient evidence that appellees never agreed to render accounting service "of a specified nature" to appellants "with respect to the matter in dispute."

We overrule point of error six.

In point of error nine, appellants contend the instructions regarding the statute of limitations in jury questions 12 and 13 were erroneous. Appellants complain about the instructions and the jury's finding that appellants discovered or should have discovered their claims more than two years before they sued. Although we consider these complaints to be without merit, we decline to review them because the judgment may be upheld based on the jury's refusal to find for appellants on their causes of action, without regard to the affirmative defense of limitations.

Point of error nine is overruled.

In points of error one and two, Cheryl L. Thompson, only, complains that the trial court erred in overruling her motion to disqualify appellees' lawyers, Andrews & Kurth, because they had a conflict of interest, and that the trial court erred in refusing to conduct an *in camera* inspection of Andrews & Kurth's file regarding its earlier transaction with her.[4] Appellant Mary Claude Thompson raises no such complaint.

 We overrule these points of error for several reasons. First, the motion to disqualify was untimely. It was filed less than 30 days before trial, even though Andrews & Kurth had represented appellees for

almost a year, a fact of which Cheryl Thompson was charged with notice. Second, the judge heard evidence from appellees that there was no attorney-client relationship with Cheryl, but Cheryl did not testify. When a party with special knowledge of a disputed issue fails, without explanation, to testify about it, a judge may infer that the party knew its testimony would not support its claim. *Alcorn v. Vaksman*, 877 S.W.2d 390, 400 (Tex.App.—Houston [1st Dist.] 1994, writ requested). Thus, the judge could reasonably have concluded there was no attorney-client relationship. Third, the trial court granted a motion in limine concerning allegedly confidential communications that Cheryl Thompson feared would be used by Andrews & Kurth to help appellees support their defense of limitations. As a result of this and other rulings, the jury never heard this evidence. There is no complaint on appeal that the jury heard any confidential information. Therefore, Cheryl Thompson was not harmed at trial. Although the jury found against her on limitations, it did so based on other evidence that was not confidential. *See Turner v. Turner*, 385 S.W.2d 230, 236 (Tex. 1965) (no harm where no confidential information was revealed at trial); *Matter of S.C.*, 790 S.W.2d 766, 777–78 (Tex.App.—Austin 1990, writ denied) (in 1988 murder case, prosecutor's prior representation of appellant in 1985 assault case did not harm appellant, where no details of the assault were discussed in the 1988 case and information about appellant's bad reputation which State utilized came from a source independent of the prior representation). Finally, the significance of the alleged conflict of interest was that it created information favorable to appellees on their limitations defense. Because the judgment may be upheld on a basis other than limitations, any error was harmless. TEX.R.APP.P. 81(b)(1).

Points of error one and two are overruled.

 In point of error three, appellants contend the trial court erred in granting appellees' motion in limine and in sustaining

---

4. We grant appellant's motion to file a supplemental transcript containing Andrews & Kurth's file.

appellees' objections to evidence of Mr. Thompson's poor health. They claimed such evidence was relevant to all their causes of action, especially to the fiduciary duties owed by appellees to appellants.

Granting a motion in limine does not constitute reversible error. *Keene Corp. v. Kirk*, 870 S.W.2d 573, 581 (Tex.App.—Dallas 1993, no writ). Moreover, Mr. Thompson's health was irrelevant because it was undisputed that he was competent to make the will. Again, this case is not a will contest, and Mr. Thompson's testamentary capacity was not at issue. Although a witness for appellants, Dan Hanke, testified in a bill of exceptions that a certified public accountant owed a higher duty to a client who was elderly and ill, that does not affect any duty appellees owed to appellants. There is no claim that appellees breached any fiduciary duty to Mr. Thompson.

Point of error three is overruled.

In point of error 15, appellants contend the trial court erred in granting a directed verdict against their claims under the DTPA, for civil conspiracy, and for negligent misrepresentation.

Regarding the DTPA claim, the trial court found appellants were not consumers. We agree. A plaintiff must be a consumer to recover under the DTPA. *Farmers & Merchants State Bank v. Ferguson*, 617 S.W.2d 918, 919 (Tex.1981). A "consumer" is one who has sought or acquired goods or services by purchase or a lease. TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). In addition, the goods and services in question must form the basis of the plaintiff's complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). Whether a plaintiff is a consumer under the DTPA is a question of law. *Reed v. Israel Nat. Oil Co.*, 681 S.W.2d 228, 233 (Tex.App.—Houston [1st Dist.] 1984, no writ).

The evidence shows that appellants purchased certain services from appellees—namely, their services in preparing tax returns—and also that appellees reviewed a marital property agreement for Cheryl Thompson. These services, however, are not the basis for this lawsuit. The services that form the basis of this suit were rendered not to appellants, but to Mr. Thompson. He purchased them for his benefit, not for theirs. Accordingly, we hold that appellants were not consumers and thus had no standing to sue under the DTPA.

Civil conspiracy requires that conspirators agree to do unlawful acts and thereby cause damages. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). We have found that, as a matter of law, appellees committed no unlawful acts and caused no damages. Moreover, the trial court found, and we agree, that the final judgment admitting the 1989 will to probate barred the civil conspiracy claim.

The elements of negligent misrepresentation include a false representation made for the guidance of others who rely on it and suffer damage. *Hagans v. Woodruff*, 830 S.W.2d 732, 735–36 (Tex.App.—Houston [14th Dist.] 1992, no writ). The record shows, as a matter of law, that appellees provided no false information to appellants for their guidance, and appellants did not rely on any such information or suffer a loss caused by it.

Point of error 15 is overruled.

In points of error 10 and 11, appellants complain the court abused its discretion in admitting testimony of Warren Williams, Zivley, and Wallace because they were not properly designated. Williams was designated as an expert witness by Warren Electric and as a fact witness by appellants themselves. Appellees listed him by reference in the docket control order. Moreover, Williams' testimony caused no surprise, consisting only of his deposition.

Zivley was designated a trial witness by appellants and by appellees in the docket control order. Thus, appellants were not surprised; only his deposition testimony was admitted.

Wallace was designated an expert witness by appellees and others. His testimony caused no surprise, consisting of his deposition. In objecting to Wallace's testimony, appellants claimed it was cumulative and

dealt with uncontested issues. If so, it did not harm them.

Finally, appellants have not shown harm from the testimony of any of these witnesses. TEX.R.APP.P. 81(b)(1). They complain that Williams was the only expert witness for appellees to testify about the condition of Warren Electric; that matter was irrelevant, because it affected damages only. They complain that Wallace and Zivley were the only attorneys to testify about the effects of the 1989 will. The effects of the 1989 will were obvious and not disputed. Moreover, appellants cite no pages where the testimony they complain of may be found. We decline to search for error. TEX.R.APP.P. 74(d), (f).

We overrule points 10 and 11.

In point of error 12, appellants contend the trial court erred in admitting testimony from Wallace and Zivley because they were attorney expert witnesses testifying about the duties of accountants rather than the duties of attorneys. Appellants made no objections on this basis to Zivley's testimony. TEX. R.APP.P. 52(a). Moreover, appellants' record citations under this point of error concern the witnesses' testimony on other matters. Appellants have not provided record references showing where the testimony complained of was admitted. TEX.R.APP.P. 74(d), (f). Nothing is presented for review.

Point of error 12 is overruled.

In points of error 13 and 14, appellants complain the court erred in admitting the testimony of Robert Hancock, an expert witness, because of failure to produce various documents and because his opinion at trial differed from that expressed at his deposition nine days before.

We hold that any error was harmless in light of our previous holdings and the jury's verdict. The jury found that appellees had a fiduciary relationship with appellants. The jury also found, in question 2, either that there was no breach of the duty or that the breach caused no damage. Hancock's testimony related to an issue on which appellants prevailed, the existence of a fiduciary duty, making its admission harmless. Moreover, Hancock's testimony had nothing to do with the absence of damage arising from any breach, an independent legal basis for our decision.

Points of error 13 and 14 are overruled.

■ In point of error 16, appellants contend the court erred in limiting their cross-examination of Robert Hancock. They sought to show that, in an unrelated matter, he had once recommended that Deloitte be sued for breach of fiduciary duty. We overrule this point for several reasons. First, appellants have not cited where in the record the excluded evidence was offered by bill of exception, TEX.R.APP.P. 74(f), and independently, we have found no such bill of exception. Thus, nothing is preserved for review. TEX.R.APP.P. 52(b). Second, the testimony does not concern the jury's refusal to find either a breach of duty or damages from it in this particular case. The judge did not abuse his discretion.

Point of error 16 is overruled.

The judgment is affirmed.