TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00059-CV






Alida M. Anton, Appellant



v.



Merrill Lynch(1) and Russell Norwood, Individually, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, PROBATE COURT NO. 1,


NO. 70,223-B, HONORABLE GUY S. HERMAN, JUDGE PRESIDING






 Alida M. Anton appeals a summary judgment that she take nothing on her claims
against Merrill Lynch and Russell Norwood. Appellant's deceased husband had an individual
retirement account ("IRA") with Merrill Lynch. Shortly before his death, he removed her as the
death beneficiary of his IRA in favor of his surviving children. Appellant claims that, by
complying with her husband's request without informing her, the appellees committed a deceptive
trade practice, violated a fiduciary duty, and breached a contract. She contends that the probate
court erred by rendering summary judgment against her. We will affirm the judgment.


BACKGROUND


 In 1995, the decedent, Paul Anton, rolled the funds from his 401k plan into an IRA
with Merrill Lynch. Norwood was his financial consultant. According to appellant's affidavit,
the IRA included $16,800 of her separate property along with an unknown amount of their
community property and Paul's separate property; this complicated division was due to their
divorce and remarriage to each other. Paul designated appellant the primary beneficiary to receive
payment of the balance of his account upon his death. He named his surviving children the
contingent beneficiaries if appellant predeceased him.

 Appellant also decided to invest with Merrill Lynch and Norwood. She swears in
her affidavit that, in developing her investment strategy, she and Norwood included Paul's IRA
when discussing her assets.

 In December 1996, Paul had a heart transplant. He decided to redesignate the death
beneficiaries of his IRA. Alida A. Anton, one of three surviving children, avers that Paul was
medicated, delusional, emotionally unstable, belligerent, confused, nonsensical, paranoid, and
forgetful after his surgery. She brought the Merrill Lynch redesignation form (filled out by
someone else) to him and watched him sign it; she swears he did not understand what he was
doing. (Norwood swears that Paul signed the document in the Merrill Lynch office on January
2, 1997.) Appellant avers that she did not learn of the change in beneficiaries of the IRA until
Paul died in April 1997.

 Appellant sued Merrill Lynch, Norwood, and the three children. Merrill Lynch
and Norwood moved for summary judgment, stating eight bases. In her second amended petition,
appellant eliminated two of her claims against the appellees (mooting two bases of their motion)
and limited her claims against the appellees to breach of fiduciary duty, breach of contract, and
DTPA violations. The remaining bases of the motion include the following: that appellant lacked
consumer status with respect to the IRA; that appellees had no contract with appellant about the
IRA and no fiduciary duty to her with respect to the IRA; and that appellees had the right to rely
on Paul's authority to direct the use of the funds in the IRA and an obligation to give effect to the
change in beneficiaries as ordered by Paul.(2) The district court granted the motion for summary
judgment and severed the claims against Merrill Lynch and Norwood from the claims against the
beneficiaries, making the summary judgment final. This appeal followed.


DISCUSSION


 Appellant asserts by her sole point of error that the probate court erred by granting
the take nothing summary judgment. She contends that genuine issues of material fact exist
regarding the appellees' performance of fiduciary and contractual duties owed to her as an owner
of funds in the IRA, as a death beneficiary of the IRA, and as appellees' client. Appellant argues
that genuine issues exist about whether the appellees' conduct constituted deceptive trade practices. 

 Defendants seeking summary judgment must negate as a matter of law at least one
element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each
element of an affirmative defense. See Tex. R. Civ. P. 166a(c); Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995). If defendants produce evidence establishing their right to
summary judgment, the burden shifts to the plaintiff to present evidence raising a fact issue. See
id. On appeal, the movants still bear the burden of showing that there is no genuine issue of
material fact and that they are entitled to judgment as a matter of law. See Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). We will indulge all reasonable inferences and resolve
all doubts in favor of the losing party. University of Tex. Health Sci. Ctr. v. Big Train Carpet,
Inc., 739 S.W.2d 792, 792 (Tex. 1987). "When a trial court's order granting summary judgment
does not specify the ground or grounds relied on for its ruling, summary judgment will be
affirmed on appeal if any of the theories advanced are meritorious." Carr v. Brasher, 776 S.W.2d
567, 569 (Tex. 1989).


Enforcing the rules governing beneficiary changes

 Appellant argues that, as a third-party beneficiary of Paul's IRA, she had a right
to ensure that the change in beneficiary designation substantially complied with Merrill Lynch's
rules. The custodial agreement governing the IRA states, "You can change your beneficiary
designation any time and as often as you wish. Any change of beneficiary, however, must be in
writing subject to any rules we may establish and is not effective until we receive it." The
instructions for completing the beneficiary form essentially duplicate that language (deleting
"subject to any rules we may establish") and add, "You must sign and date your Beneficiary
Designation/Change Form in order for it to become effective when delivered to Merrill Lynch." 
The beneficiary designation form itself contains blanks for the name and address of the primary
beneficiary, the share of the fund granted, and the beneficiary's date of birth and social security
number. Above the signature line, the form states, "I am aware that this form replaces all prior
beneficiary designations for this account, becomes effective when delivered to Merrill Lynch, and
will remain in effect until I deliver to Merrill Lynch another form with a later date." The
signature line also has space for the date and the daytime telephone number. There are no
instructions on the form itself requiring any additional information.

 Appellant complains that Paul did not comply with Merrill Lynch's rules because
he did not supply all the information requested on the form. He redesignated his "surviving
children equally" the beneficiaries of a "100%" share. The form lacks their names, addresses,
dates of birth, or social security numbers. There is evidence that Paul did none of the writing
except for where he signed and dated the form; he did not include his daytime telephone number. 
Appellant argues that these deficiencies at least create fact questions regarding whether Paul
adequately redesignated the beneficiary. Appellant contends that she can enforce Merrill Lynch's
rules even if Merrill Lynch chooses not to do so. See Creighton v. Barnes, 257 S.W.2d 101, 103
(Tex. 1953).

 Appellant cannot enforce Merrill Lynch's rules in this case. First, the evidence
does not show rules violations. No rules required that Paul fill all the blanks before signing it. 
The rules require only that a change be made in writing, signed and dated, and received by Merrill
Lynch before it is effective; Paul fulfilled these conditions. Even if rules were violated, appellant
cannot enforce rules that Merrill Lynch waived timely. See Fidelity Union Life Ins. Co. v.
Methven, 346 S.W.2d 797, 800 (Tex. 1961). In Methven, the supreme court distinguished
Creighton, holding that "[p]olicy requirements for effecting a change of beneficiary are primarily
for the benefit of the insurer and compliance with them may be waived by the insurer during the
lifetime of the insured." The court further wrote: 

 When Policy requirements for effecting a change of beneficiary have been waived
by the insurer and a change of beneficiary in a manner satisfactory to the insurer
and the insured has been completed during the lifetime of the insured, the ousted
beneficiary has no legal standing after death of the insured to assert that the change
was effected without substantial compliance with policy requirements.



Id. Merrill Lynch apparently waived any violations and accepted the redesignation because it did
not reject the redesignation and distributed the funds to the surviving children. Whether Paul
complied with the rules or Merrill Lynch waived any deficiencies, the evidence conclusively
shows that the redesignation was effective, at least as to Paul's separate and community share of
the IRA funds.(3)

 We also reject appellant's argument that the appellees had to ascertain Paul's
competence before letting him change beneficiaries. See Edward D. Jones & Co. v. Fletcher, 975
S.W.2d 539, 545 (Tex. 1998). We express no opinion of the validity of the distribution of funds. 
We conclude only that Merrill Lynch's rules do not invalidate the redesignation.


Fiduciary duty

 Appellant contends that the appellees breached their fiduciary duty to her in their
role as financial consultants.(4) She argues that her Merrill Lynch accounts made appellees her
agents(5) who owed her a fiduciary duty to help her in her financial affairs; she contends that duty
required them to tell her of the change in her financial prospects due to the change in beneficiaries.

 Our review concerns whether appellees demonstrated that they did not breach a duty
to inform her that she would not receive her husband's share(6) of the IRA funds. Appellees argue
that they had no duty to tell appellant that she was no longer a beneficiary, relying on Thompson
v. Deloitte & Touche, 902 S.W.2d 13, 16 (Tex. App.--Houston [1st Dist.] 1995, no writ)
(accountants had no duty to inform will beneficiaries of change in will and had duty not to inform
them). This case is somewhat distinct from Thompson because the decedent in Thompson
instructed Deloitte & Touche not to disclose the changes to his will, while there is no evidence of
such an instruction in this case. Id. at 16. Appellant argues that this case is further distinct from
Thompson because she was the appellees' client, while Thompson was not a client of Deloitte &
Touche (aside from tax preparation services provided at the decedent's request). See id. at 18.

 We are cited to and find no cases or statutes creating a duty to inform an IRA
beneficiary that she has been removed; the IRA's rules and general policy concerns weigh against
establishing such a duty. Imposition of a duty to inform would create great burdens on financial
consultants. The chief argument for informing removed beneficiaries is to allow them to
restructure their finances in connection with their reduced (or increased) expectancy; the same
concerns, however, would require imposing a duty to inform those beneficiaries whose potential
benefit is reduced, whether because their share of the account is reduced or the account itself is
reduced by withdrawals or declining value of investments. This burden would be offset only by
the fact that jilted beneficiaries might know how much money they might receive should their
benefactor not renege and should the supporting investments not fluctuate again. Because
beneficiaries can be redesignated at any time, so consultants would have to inform a potentially
unlimited number of persons of the changing whims of the benefactor. Because we find no
existing basis for imposing such a duty and because policy argues against it, we decline to impose
a duty here. The appellees had no duty to inform appellant in her role as a beneficiary that she
had been removed.

 Whether the appellees owed a duty to appellant as their client to inform her that she
would no longer receive all the IRA funds after Paul's death is a closer question. Characterizing
the appellees as her agents, appellant cites the Restatement of Agency, Second, to describe their
duties. Section 381 states that an agent is


 subject to a duty to use reasonable efforts to give his principal information which
is relevant to affairs entrusted to him and which, as the agent has notice, the
principal would desire to have and which can be communicated without violating
a superior duty to a third person.



Under this theory, the IRA is relevant to her finances and her discussions about the IRA with
Norwood when establishing her account notified him that she would desire to know that she was
no longer the primary death beneficiary of her husband's IRA.

 We conclude that appellant seeks to define her agent's duty too broadly. The
difficulty with her theory is that the anticipated asset that disappeared was not part of her Merrill
Lynch account for which the agency was created. The nature of the relationship between appellant
and appellees is not entirely clear; for purposes of this review, we will assume that the appellees
were brokers managing a discretionary account and had to meet a higher standard of care than a
broker who handles individual transactions at the direction of the client. A federal district court
listing the duties of a broker handling discretionary accounts stated that a broker must 

 

 (1) manage the account in a manner directly comporting with the needs and
objectives of the customer as stated in the authorization papers or as apparent from
the customer's investment and trading history; (2) keep informed regarding the
changes in the market which affect his customer's interest and act responsively to
protect those interests; (3) keep his customer informed as to each completed
transaction; and (4) explain forthrightly the practical impact and potential risks of
the course of dealing in which the broker is engaged.



Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 461 F. Supp. 951 (E.D. Mich. 1978)
(citations omitted, emphases added), aff'd, 647 F.2d 165 (6th Cir. 1981); see also McCoun v. Rea
(In re Rea), 245 B.R. 77, 90 (Bankr. N. D. Tex. 2000) (outlining duties of Texan who day-traded
stocks using adversary plaintiffs' money). Each of the listed duties relates to the funds in the
account and investments made with them. None of these duties includes informing the client that
she was no longer designated to receive an asset from another client. Though the courts in Leib
and McCoun did not have the added fact of the broker knowing that his client would not receive
an expected non-portfolio asset, we conclude that the scope of the appellees' duty to keep appellant
informed about her accounts is limited to information about assets in the account and activities
related to those assets. Absent evidence to the contrary, the duty does not extend to the client's
assets outside the account or to assets that the client anticipates someday will be in her control.

 Accordingly, the district court did not err by concluding that none of the alleged
breaches--failure to pay her the proceeds of the IRA, failure to notify her that her husband was
eliminating her as beneficiary, failure to notify her they intended to pay the children, and paying
the children--survives summary judgment.


Breach of contract

 On appeal, appellant asserts that "[b]y breaching their fiduciary duty owed to Mrs.
Anton, appellees additionally breached their contract with her." Because we have found no breach
of fiduciary duty, this theory of breach of contract also fails. She does not point to any contractual
provision breached by the appellees. The district court did not err by rendering summary
judgment against these claims.


DTPA

 Appellant next contends that the district court erred by granting summary judgment
against her claims for DTPA violations. The appellees moved for summary judgment on the basis
that appellant was not a consumer with respect to the IRA funds.

 Consumer status is a question of law. Thompson, 902 S.W.2d at 19. A consumer
under the DTPA is someone who "seeks or acquires by purchase or lease, any goods or services." 
Tex. Bus. & Com. Code Ann. § 17.45(4) (West Supp. 2000). "[T]he goods and services in
question must form the basis of the plaintiff's complaint." Thompson, 902 S.W.2d at 19; see
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981).

 Appellant was not a consumer of Paul's IRA while designated its beneficiary. The
undisputed evidence is that Paul was the only person involved in the establishment of the IRA or
the designation of death beneficiaries, and that he was the only person with contractual authority
to direct the appellees regarding the investment and disbursement of the IRA funds. The appellees
were entitled to rely on Paul's authority to manage solely an IRA bearing his name and containing
funds rolled over from his 401k plan. See Tex. Fam. Code Ann. § 3.104(b) (West 1998); Thomas
v. Rhoades, 701 S.W.2d 943, 945 (Tex. App.--Fort Worth 1986, writ ref'd n.r.e.); see also Tex.
Fam. Code Ann. § 3.102(a) (West 1998); Medenco, Inc. v. Myklebust, 615 S.W.2d 187, 189
(Tex. 1981) ("During marriage, community property employment benefits acquired through
employment are subject to the sole management, control and disposition of the employee
spouse."). No representations were made to her in the creation or maintenance of the IRA, nor
were any required to be made to her as a designated beneficiary.

 Appellant's alleged community and separate property interest in some of the funds 
does not make her a consumer with respect to the IRA. The only evidence is that Paul alone
established the IRA. There is no evidence that appellant had anything to do with seeking or
acquiring the services incident to the establishment or maintenance of the IRA. Her assertion that
funds disbursed from the IRA were hers apart from any death benefit is a quarrel with Paul's
estate and his heirs, not these appellees.(7)

 Nor does appellant's consumer status with respect to her own accounts give her a
DTPA cause of action for the appellees' failure to inform her that she had been removed as the
beneficiary of Paul's IRA. She complains that she was not told of the change in beneficiaries of
the IRA and her requested relief is that she receive all or some of the IRA funds. The only
relationship of her beneficiary status to her accounts is that she alleges she considered the IRA
funds when opening her account. She does not allege that she had any discussions or made any
investment decisions after January 2, 1997, while under the mistaken belief that she was still a
beneficiary; rather, she avers that she never heard from the appellees until after Paul's death. She
does not allege that the change in beneficiary affected her personal accounts. Thus, the funds at
the center of her claim (the IRA) are not the funds or services for which she contracted (her
accounts). To prevail on this theory, she must be a consumer as to the IRA. See Thompson, 902
S.W.2d at 19. The undisputed evidence shows that she did not seek or acquire by purchase or
lease an expectation in the IRA funds.(8) Because she is not a DTPA consumer of Paul's IRA, the
district court did not err by rendering judgment against her DTPA claims.


CONCLUSION


 Having found that none of appellant's complaints warrants reversal, we affirm the
summary judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: January 11, 2001

Do Not Publish Released for publication February 15, 2001. Tex. R. App. P. 47.3(c).


1. The full name of this appellant is Merrill, Lynch, Pierce, Fenner & Smith, Inc. We use the
name "Merrill Lynch" because that is how the trial court styled it based on appellant's pleadings.
2. We omit the appellees' argument that they made no representations regarding the IRA to
appellant. Under the summary-judgment standard of review, appellant defeated this ground by
her affidavit testimony that appellees made representations. See University of Tex. Health Sci. Ctr.
v. Big Train Carpet, Inc., 739 S.W.2d 792, 792 (Tex. 1987).
3. We are not required to decide and expressly do not decide whether Paul could direct who
would receive all of the money in the IRA. See Prudential Ins. Co. v. Burke, 614 S.W.2d 847,
849 (Tex. App.--Texarkana 1981, writ ref'd n.r.e.).
4. She does not claim that they breached their fiduciary duty by allowing the redesignation of
beneficiaries. Such argument would be futile under existing precedent. See Fletcher, 975 S.W.2d
at 545; Burke, 614 S.W.2d at 849 (insurer must change beneficiary at insured's direction despite
ex-wife/original beneficiary's community interest in policy proceeds), aff'd, 621 S.W.2d 596, 597
(Tex. 1981) ("The Court of Civil Appeals has correctly decided the case.").
5. We are not entirely certain that appellant can raise this argument on appeal. At trial, she
argued that Merrill Lynch as trustee owed fiduciary duties to her, a third-party beneficiary of the
IRA. Some evidence indicates appellees were appellant's agent. An agent consents to act on
behalf of, and subject to the control of, a principal who has manifested consent that the agent shall
so act. Hand v. Dean Witter Reynolds, Inc., 889 S.W.2d 483, 493 (Tex. App.--Houston [14th
Dist.] 1994, writ denied). A broker is an agent hired on commission to negotiate deals for others
in matters of trade and commerce. Robles v. Consolidated Graphics, Inc., 965 S.W.2d 552, 557
(Tex. App.--Houston [14th Dist.] 1997, pet. denied). A brochure provided to appellant expressly
states that "[w]hen securities are listed on an exchange or when we do not maintain a position in
a particular unlisted security, we generally will work as your agent to obtain a buyer or seller for
you. We add a commission charge to the execution price." Appellees do not point to evidence
in the record indicating that they were not her agent (perhaps because appellant did not raise this
theory below). Though it is unclear whether her trial theory of the fiduciary duty's origin
preserves review of the agency-based arguments she makes here, we will review them assuming
Merrill Lynch was her agent.
6. Appellant concedes that some of the IRA funds were Paul's separate property and his share
of the community property portion. If some of the funds in the IRA were either appellant's
separate or community property, the change in beneficiary did not alter that fact. "The insured
may change the beneficiary and if he does his act constitutes a gift of his interest in the policy to the
new beneficiary, but it does not affect the first beneficiary's community interest in the proceeds of
the policy when payable. In other words, the change of beneficiary is effective only as to the
insured's community interest." Burke, 614 S.W.2d at 849.
7. A third person can be held liable for knowingly participating in a breach of fiduciary duty
such as a fraud on the community estate of spouses. Osuna v. Quintana, 993 S.W.2d 201, 208
(Tex. App.--Corpus Christi 1999, no pet.). We do not find such allegations against appellees in
the pleadings.
8. She may have obtained an interest in some of the funds in the IRA by virtue of her marriage,
divorce, and remarriage to Paul. As discussed above, her claim that some of the money in the
IRA belonged to her is distinct from her claim that the appellees violated a duty to her while
following Paul's directions.


ause she is not a DTPA consumer of Paul's IRA, the
district court did not err by rendering judgment against her DTPA claims.


CONCLUSION


 Having found that none of appellant's complaints warrants reversal, we affirm the
summary judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: January 11, 2001

Do Not Publish Released for publication February 15, 2001. Tex. R. App. P. 47.3(c).


1. The full name of this appellant is Merrill, Lynch, Pierce, Fenner & Smith, Inc. We use the
name "Merrill Lynch" because that is how the trial court styled it based on appellant's pleadings.
2. We omit the appellees' argument that they made no representations regarding the IRA to
appellant. Under the summary-judgment standard of review, appellant defeated this ground by
her affidavit testimony that appellees made representations. See University of Tex. Health Sci. Ctr.
v. Big Train Carpet, Inc., 739 S.W.2d 792, 792 (Tex. 1987).
3. We are not required to decide and expressly do not decide whether Paul could direct who
would receive all of the money in the IRA. See Prudential Ins. Co. v. Burke, 614 S.W.2d 847,
849 (Tex. App.--Texarkana 1981, writ ref'd n.r.e.).
4. She does not claim that they breached their fiduciary duty by allowing the redesignation of
beneficiaries. Such argument would be futile under existing precedent. See Fletcher, 975 S.W.2d
at 545; Burke, 614 S.W.2d at 849 (insurer must change beneficiary at insured's direction despite
ex-wife/original beneficiary's community interest in policy proceeds), aff'd, 621 S.W.2d 596, 597
(Tex. 1981) ("The Court of Civil Appeals has correctly decided the case.").
5. We are not entirely certain that appellant can raise this argument on appeal. At trial, she
argued that Merrill Lynch as trustee owed fiduciary duties to her, a third-party beneficiary of the
IRA. Some evidence indicates appellees were appellant's agent. An agent consents to act on
behalf of, and subject to the control of, a principal who has manifested consent that the agent shall
so act. Hand v. Dean Witter Reynolds, Inc., 889 S.W.2d 483, 493 (Tex. App.--Houston [14th
Dist.] 1994, writ denied). A broker is an agent hired on commission to negotiate deals for others
in matters of trade and commerce. Robles v. Consolidated Graphics, Inc., 965 S.W.2d 552, 557
(Tex. App.--Houston [14th Dist.] 1997, pet. denied). A brochure provided to appellant expressly
states that "[w]hen securities are listed on an exchange or when we do not maintain a position in
a particular