TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00234-CV






David L. Andrews, Appellant


v.


Texas Department of Health, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN501212, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 

 The Texas Department of Health (1) revoked appellant David L. Andrews's respiratory
care practitioner ("RCP") certificate. The district court affirmed the Department's decision and
Andrews appeals. Andrews argues that the decision to revoke his certificate was not supported by
sufficient evidence and that the administrative law judge ("ALJ") acted arbitrarily and capriciously
by omitting or ignoring exculpatory witness testimony in his proposal for decision. Andrews asserts
that he was improperly penalized for invoking his Fifth Amendment privilege. Finally, he contends
that the Department's failure to comply with his request for a transcript of the hearing before he filed
his administrative motion for rehearing was a violation of Texas law and a denial of his
constitutional right to equal protection and due process. We affirm.

 Based on a complaint that Andrews improperly removed Fentanyl (2) from a patient's
intravenous fluid ("IV") bag for his personal needs, the Department suspended Andrews's RCP
certificate. At the ALJ's disciplinary hearing, the Department called seven witnesses and offered
its investigation report into evidence. No one testified that they saw Andrews remove Fentanyl from
an IV bag or found evidence of illicitly obtained Fentanyl in his possession or control. Witnesses
testified that Andrews had a history of painkiller addiction, was using a prescribed Fentanyl patch
when accused of removing Fentanyl from a patient's IV bag, and was seen handling a patient's
Fentanyl IV bag in an unusual manner. A Fentanyl IV bag that was seen unpunctured shortly before
Andrews handled it was seen to have been punctured shortly thereafter. Andrews declined to offer
evidence and chose not to testify, asserting his Fifth Amendment right against self-incrimination.

 The ALJ submitted a proposal for decision to the Commissioner of the Department
to which Andrews filed objections. The Commissioner found the ALJ's proposal supported by a
preponderance of the evidence, adopted the ALJ's proposed findings and conclusions, and denied
Andrews's motion for rehearing. The district court affirmed the Commissioner's decision.

 In reviewing the trial court's judgment affirming the Department's order, we use the
substantial evidence standard of review defined in the Administrative Procedure Act. See Tex. Gov't
Code Ann. § 2001.174(2)(E) (West 2000) ("APA"). When reviewing an agency's decision, we
presume that the order is supported by substantial evidence, and the person challenging the decision
has the burden to overcome this presumption. Granek v. Texas State Bd. of Med. Exam'rs, 172
S.W.3d 761, 778 (Tex. App.--Austin 2005, no pet.) (citing Texas Health Facilities Comm'n v.
Charter Med.-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984)). We are concerned with the
reasonableness of the administrative order and not its correctness. See Firemen's & Policemen's
Civil Serv. Comm'n v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1996). The APA authorizes us to
"test the agency's findings, inferences, conclusions, and decisions to determine whether they are
reasonably supported by substantial evidence considering the reliable and probative evidence in the
record as a whole." Texas Dep't of Pub. Safety v. Latimer, 939 S.W.2d 240, 244 (Tex. App.--Austin
1997, no pet.) (citing Charter, 665 S.W.2d at 452). The agency determines the meaning, weight, and
credibility to assign the conflicting evidence. Texas State Bd. of Med. Exam'rs v. Scheffey, 949
S.W.2d 431, 437 (Tex. App.--Austin 1997, pet. denied). We may not set aside an agency decision
because testimony was conflicting or disputed or because it did not compel the agency's decision. 
Brinkmeyer, 662 S.W.2d at 956.

 Substantial evidence does not mean a large or considerable amount of evidence, but
rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion
of fact. Hinkley v. Texas State Bd. of Med. Exam'rs, 140 S.W.3d 737, 743 (Tex. App.--Austin 2004,
pet. denied). The evidence in the record may preponderate against the agency's decision and
nevertheless amount to substantial evidence. (3) Latimer, 939 S.W.2d at 244. A court reviewing an
agency action "shall reverse and remand the cause to the agency when substantial rights of the
appellant have been prejudiced by an agency's findings that are not reasonably supported by
substantial evidence considering the reliable evidence in the record as a whole." Hinkley, 140
S.W.3d at 743. If reasonable minds could have reached the conclusion that the agency must have
reached, then that conclusion must stand. Texas State Bd. of Dental Exam'rs v. Sizemore, 759
S.W.2d 114, 116 (Tex. 1988).

 Andrews asserts that the Department's decision to revoke his RCP certificate was not
supported by substantial evidence and asks this Court to reverse and remand his case for further
proceedings. Andrews challenges the sufficiency of the evidence to support two findings of fact:


 3. Shortly after midnight on February 2, 2004, Respondent tampered with and
punctured a hole in an IV bag containing Fentanyl that was being administered to a
hospital patient. 

 

 . . . .

 

 5. Respondent tampered with the IV bag containing Fentanyl to divert the narcotic
for his personal needs and to the detriment of a patient.

 


He also challenges three conclusions of law based on these findings: (4)


 4. The Respondent engaged in an activity that sought to meet his personal needs at
the expense or to the detriment of a patient, as prohibited by 25 Tex. Admin. Code
§ 123.12(2)(G).

 

 5. Based on Conclusion of Law No. 4 and 25 Tex. Admin. Code § 123.12(2)(G),
Respondent's conduct was unethical.


 6. Respondent committed dishonest or unethical conduct as contemplated by Tex.
Occ. Code Ann. § 604.201(b)(4).

 

Andrews declined to testify, call any witnesses, or submit any evidence. Thus, the record contains
only evidence proffered by the Department. 

 Andrews began working at the University Hospital at San Antonio ("UHSA") as a
respiratory care practitioner in November 2003. During January 2004, UHSA employees discovered
that some of the patients' IV bags were missing Fentanyl. These discrepancies were found only with
respect to patients located on the tenth floor of UHSA. The pharmacy department's investigation
eliminated pump malfunction, defective bags, and documentation error as the causes for the
shortages in Fentanyl. The abnormal IV bags were found to have small pin holes in them, raising
suspicions of tampering. This further concerned UHSA staff because the holes added a risk of
contamination or infection for the patients. Once tampering was determined to be the most likely
cause of the discrepancies, the nurses at UHSA were instructed to closely monitor the Fentanyl IV
bags and to check them hourly. 

 During the late evening hours of February 1, 2004, Andrews was in UHSA room 1026
until about 11:30 p.m. tending to a patient's respirator. Nurse Blasa Velez was in the room with
Andrews from 10:45 p.m. until he left. Velez testified that Andrews was in room 1026 for an
unusual amount of time. She checked the IV bag for leaks or holes once while she was in the room
with Andrews and once at 11:50 p.m., after he left. At both times, she found no holes or leaks in the
Fentanyl IV bag in room 1026. When leaving the room, Velez requested that other nurses monitor
the room while she tended to other patients. Velez testified that, shortly after she left the room to
tend to another patient, Andrews re-entered the room and handled the IV bag. 

 Shortly after midnight, nurses Lydia Gallegos, Maria Falcotelo, and Susan Robertson
observed Andrews in room 1026 handling the patient's IV bag, which he had removed from the IV
pole. Gallegos testified that she saw Andrews holding the Fentanyl IV bag. Falcotelo called charge
nurse Robertson to investigate when she saw Andrews handling the IV bag with tape on his fingers. 
Robertson testified that, when she arrived, Andrews had the IV bag off the pole in both of his hands. 
Robertson testified that Andrews hung the bag back on the pole, then got something off of the
window sill and put it in his pocket. Gallegos testified that Andrews said that he was looking for
the patient's name on the bag. As Robertson looked on, Gallegos also noticed that the bag was wet
and asked Andrews about it. She held the bag up to the light and saw a small puncture in the bag. 
Andrews did not respond to Gallegos's question about the wetness, but instead left the room.

 Gallegos testified that there is no reason for an RCP to handle a Fentanyl IV bag. 
Velez also testified that RCPs administer drugs through needleless syringes put into the ventilator. 
No one testified that they saw Andrews holding a needle syringe or puncturing the bag. Velez
testified that it would be unusual for an RCP to find a patient's name by checking the IV bag
because, on the way to the bag, the RCP would walk past a chart containing the patient's name, walk
through a door that provides the patient's name, and walk past several nurses, each of whom would
know the patient's name. Donnie Holman, the director of respiratory care at UHSA, testified
that he had never seen anyone check an IV bag to identify a patient in his thirty years of
healthcare employment. 

 Sergeant Sherrie King of the Bexar County Hospital District Police Department
testified that she met Andrews at about 3:00 a.m., nearly three hours after Andrews left room 1026. 
King saw no needle marks on Andrews. Andrews consented to a search of his person and locker as
well as to a urinalysis. It is undisputed that Andrews's urine sample would test positive for Fentanyl
because he had been prescribed a Fentanyl patch following a severe automobile accident in 2003. 
Andrews admitted that he had previously been prescribed a different pain-killing narcotic,
OxyContin. Andrews told King that he checked himself into a rehabilitation clinic because his
OxyContin prescription was too high of a dose and he became addicted. Additionally, King stated
that Andrews acted a little strange during her interview with him. She testified that Andrews would
look her in the eye when she asked him direct questions--for example, "what is your name?"--and
would divert his attention and shift in his seat when asked about the IV bag incident. King also
testified that her investigation focused on Andrews. 

 Falcotelo, Robertson, and pharmacy supervisor Javier Palacios testified that a
puncture in the IV bag can be detrimental to the patient because it removes medication and opens
what should be a closed system to the possibility of contamination or infection. 

 Andrews contends on appeal that the ALJ ignored or failed to mention evidence
contrary to his findings of fact, thereby acting arbitrarily and capriciously. See Tex. Gov't Code
Ann. § 2001.174(2)(F). However, the ALJ did mention in his proposal for decision almost all of the
evidence Andrews complains is missing. The only evidence Andrews relies on that was not
mentioned in the proposal for decision is King's testimony that she investigated only Andrews
regarding tampering with this particular Fentanyl bag. In light of the balance of the evidence, this
omission is not material. The remainder of the evidence that Andrews complains about--e.g.,
restraints obscuring ID bracelets, Andrews's cooperation in the investigation, absence of direct
evidence that he punctured the bag or took the Fentanyl--is included in the narrative portion of the
proposal for decision. The ALJ could have declined to include this conflicting information in his
findings and conclusions because he either rejected it or deemed it irrelevant. This is not error, but
is the essence of winnowing findings from a body of evidence and then applying relevant law to
make findings and reach conclusions.

 After hearing and weighing the testimony and other evidence, the ALJ determined
that Andrews tampered with an IV bag containing Fentanyl to the detriment of a patient, and did so
in order to divert the narcotic for his personal needs. Although no witness testified to seeing
Andrews use a syringe to extract Fentanyl from the IV bag in room 1026, evidence showed: that the
bag was intact before he was seen handling it with tape on his fingers; that the bag was punctured
and wet after he handled it; that handling the bag to determine the patient's name was unusual
behavior for an RCP; and that he was seen taking "something" from the window sill and putting it
in his pocket before leaving. Although no one found the Fentanyl or anything else that Andrews
removed from room 1026, neither he nor his locker were searched for a number of hours after the
incident. There was no dispute that removal of Fentanyl in this manner is detrimental to a patient. 
Nor is there any dispute that Andrews had a history of overusing painkillers and was at
that time prescribed Fentanyl. We conclude that substantial evidence supports the ALJ's
findings that Andrews tampered with the IV bag to a patient's detriment in order to divert Fentanyl
for his personal use. 

 We conclude that the ALJ reasonably could have reached the conclusions that
Andrews acted dishonestly and unethically and that his conduct was undertaken to further his
personal needs to the detriment of his patient. 

 Andrews complains that the ALJ recommended suspension of his certificate even
after expressly noting that there was no evidence on many of the eleven factors required to be
considered in a disciplinary proceeding brought against a Respiratory Care Practitioner. See 25 Tex.
Admin. Code § 123.14(f)(4) (2006). That section requires that the Department "take into
consideration the following factors in determining the appropriate action to be imposed in each
case." Id. (5) It does not require that the ALJ make affirmative findings as to each factor. The ALJ
listed these factors and discussed many of them, if only to note the lack of evidence concerning some
of them. He nevertheless concluded that tampering with a patient's medication for the purpose of
obtaining a narcotic for personal use is serious enough to warrant revocation of the RCP certificate. 
We cannot conclude that this recommendation was unreasonable, arbitrary, or capricious. (6)

 In his second issue, Andrews contends that his constitutional rights were violated in
two ways. He complains that he was improperly penalized for invoking his Fifth Amendment
privilege against self-incrimination. He also argues that the Department's failure to supply him with
a transcript of the ALJ's hearing before the deadline for filing a motion for rehearing passed deprived
him of equal protection and due process.

 Andrews argues that, because he faced an ongoing criminal investigation, he was
entitled to invoke his Fifth Amendment right in this civil administrative proceeding without any
negative inference being drawn. At the hearing on the merits, Andrews's attorney told the ALJ that
Andrews would not testify because he "reserves the right to decline to testify on the grounds that any
answer he may give may tend to incriminate him in the existing criminal prosecution." The ALJ
advised that, "if a party declines to testify in a civil proceeding such as this then an inference may
arise that if he testified truthfully, it might be adverse to his position." See Tex. R. Evid. 513(c). 
Andrews declined to testify and rested without proffering any evidence. The ALJ opined in his
proposal for decision that he could draw an adverse inference from Andrews's assertion of his Fifth
Amendment privilege. Andrews contends that the negative inference was improper because he
invoked his Fifth Amendment right not to incriminate himself in the pending criminal investigation
into the disappearance of Fentanyl from UHSA and, therefore, should be able to invoke the privilege
in this civil proceeding without adverse effect.

 The ALJ was entitled to draw a negative inference from Andrews's failure to testify
without regard to the applicability of the Fifth Amendment privilege. Generally, the exercise of the
privilege should not be penalized. Texas Dep't of Pub. Safety Officers Ass'n v. Denton, 897 S.W.2d
757, 760 (Tex. 1995). In a civil case, a fact-finder may draw reasonable inferences from a party's
assertion of the privilege against self-incrimination. Lozano v. Lozano, 52 S.W.3d 141, 150 (Tex.
2001); Denton, 897 S.W.2d at 760. Further, Andrews declined to testify without properly invoking
his Fifth Amendment right not to incriminate himself under oath. See Texas Dep't of Pub. Safety
v. Sanchez, 82 S.W.3d 506, 513 (Tex. App.--San Antonio 2002, no pet.). Blanket assertions of the
privilege are improper. Id. The privilege must be asserted in response to a specific inquiry so that
a judge may evaluate whether an answer to the question would tend to incriminate the witness. Id. 
Failure to invoke the privilege in this manner waives the privilege. Id. In Sanchez, the court
considered a case in which the defendant in a driver's license suspension case wanted to testify in
a limited fashion. Id. at 509. The ALJ warned him that testifying would expose him to cross-examination on any relevant matter, and that a refusal to testify could result in all of his testimony
being struck. Id. at 512. Sanchez apparently persuaded the trial court that the ALJ thereby
improperly refused to let him exercise his Fifth Amendment right not to testify against himself, and
thus prevented him from testifying. In reversing the trial court's judgment and reinstating the
ALJ's decision, the court of appeals wrote: 


 It is clear then, that to properly invoke his privilege against self-incrimination,
Sanchez was required to take the stand and assert the privilege in response to each
question he believed might tend to incriminate him. Only then would the trial court
have had the opportunity to determine whether the privilege applied. Without doing
so, Sanchez waived any complaint that the ALJ violated his privilege against
self-incrimination. 

 

Id. at 513 (citing Gebhardt v. Gallardo, 891 S.W.2d 327, 330 (Tex. App.--San Antonio 1995, no
writ)). Similarly, in this case, Andrews undisputedly was not called to testify, did not assert the
privilege in response to specific questions, and did not personally assert the privilege. Instead,
Andrews chose not to present evidence or testify, expressing the latter intent through counsel at the
ALJ's hearing. 

 When a party with special knowledge of a disputed issue fails, without explanation,
to testify about that issue, a judge may infer that the party knew its testimony would not support its
claim. Thompson v. Deloitte & Touche, L.L.P., 902 S.W.2d 13,18 (Tex. App.--Houston [1st Dist.]
1995, no writ). Andrews had special knowledge of whether he tampered with the IV
bags and explained his refusal to testify only through his counsel's attempts to invoke the
privilege not to testify. The ALJ was entitled to draw a negative inference from Andrews's
choice not to testify. See id.

 Finally, Andrews asserts that the Department's failure to comply with his request for
a transcript of the ALJ's hearing on the merits deprived him of his constitutional right to equal
protection and due process. The ALJ's hearing was recorded on tape and the ALJ used excerpts
from the testimony in support of his proposal for decision. When Andrews filed exceptions to the
proposal for decision, he requested that the hearing be transcribed and that the transcript be
forwarded to the Department along with the ALJ's proposal for decision. After the Department
adopted the proposal for decision, Andrews filed a motion for rehearing that included his complaint
that the transcription would not be prepared and available to him until after his appeal was filed. He
complained to the Department, as he does here, that the absence of a transcript prevented him from
filing an adequate motion for rehearing in order to lay the groundwork for his suit for judicial review. 
The ALJ's hearing was not transcribed until after he filed his suit for judicial review.

 Andrews has not demonstrated that the failure to transcribe the hearing before he filed
this suit deprived him of equal protection. See Tex. R. App. P. 44.1(a). A claim of deprivation of
equal protection rights requires a showing that an individual was treated differently from others
similarly situated. Plyler v. Doe, 457 U.S. 202, 216 (1982). Andrews, however, has not shown that
his record preparation schedule was different from that of any other individual going through an
administrative procedure, before the Department or otherwise. (7) 

 Nor has Andrews shown that he was denied due process in any way that harmed him. 
The statute under which he requested a transcription of the hearing does not require that the
transcription be prepared before the motion for rehearing is due. See Tex. Gov't Code Ann.
§ 2001.059 (West 2000). Even if due process required that he have a transcription of the hearing in
time to prepare his motion for rehearing to the Department, Andrews has not shown either that the
absence of a transcript at the time he prepared his administrative motion for rehearing probably
caused the rendition of an improper judgment or that he was either prevented from presenting any
argument to the trial court or this Court. Consequently, he has shown no reversible error from any
deprivation of due process. See Tex. R. App. P. 44.1(a).

 

 


 __________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: February 15, 2007
1. While this case has proceeded, the Texas Department of Health was renamed the Texas
Department of State Health Services. We will retain the previous name in the style for consistency
and refer to the entity as "the Department."
2. "Fentanyl is an extremely potent anesthetic, estimated to be a hundred times more potent
than morphine on a milligram per milligram basis. It is the most commonly used narcotic analgesic
. . . ." Swayze v. McNeil Laboratories, Inc., 807 F.2d 464, 466 (5th Cir. 1987).
3. Even if a litigant has arguably failed to meet their burden of proof before the agency, our
review of the agency decision is limited by the substantial evidence rule. If there is substantial
evidence supporting the decision, we must defer to the agency even if that evidence would not
amount to a preponderance of the evidence. 
4. We note that Andrews does not--as he did at the trial court--challenge the Department's
conclusions of law 7, 8, and 9 to the effect that he violated occupations code section 604.201(b)(3)
by improperly obtaining a habit-forming drug or narcotic, that the Department shall take disciplinary
action against a person who engages in dishonest or unethical conduct as required by section
604.201(b), and that revocation of his certificate is warranted and justified.
5. The factors to be considered include: 


 (A) the severity of the offense;

 (B) the danger to the public;

 (C) the number of repetitions of offenses;

 (D) the length of time since the date of the violation;

 (E) the number and type of previous disciplinary cases filed against the respiratory
care practitioner (RCP);

 (F) the length of time the RCP has performed respiratory care procedures;

 (G) the actual damage, physical or otherwise, to the patient, if applicable;

 (H) the deterrent effect of the penalty imposed;

 (I) the effect of the penalty upon the livelihood of the RCP;

 (J) any efforts for rehabilitation; and

 (K) any other mitigating or aggravating circumstances.


25 Tex. Admin. Code Ann. § 123.14(f)(4) (2006).
6. We reach this conclusion without regard to whether the ALJ was entitled to draw a negative
inference from Andrews's invocation of his Fifth Amendment right not to testify. We conclude that,
even without such an inference, the record contained substantial evidence supporting the ALJ's
findings, conclusions, and recommendation.
7. Andrews may be arguing that he was treated differently from the ALJ because the ALJ had
access to the hearing tapes when preparing the proposal for decision. But this argument lacks an
essential element of an equal protection claim because, as a litigant, Andrews is not "similarly
situated" to an ALJ, an impartial hearing officer. Further, there is no showing that Andrews was
denied access to something the ALJ had--i.e., there is no showing that the ALJ denied Andrews
access either to the recordings of the hearing or a prepared transcription thereof.