# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00059-CV

**Alida M. Anton, Appellant**

**v.**

**Merrill Lynch[1] and Russell Norwood, Individually, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, PROBATE COURT NO. 1, NO. 70,223-B, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

Alida M. Anton appeals a summary judgment that she take nothing on her claims against Merrill Lynch and Russell Norwood. Appellant's deceased husband had an individual retirement account ("IRA") with Merrill Lynch. Shortly before his death, he removed her as the death beneficiary of his IRA in favor of his surviving children. Appellant claims that, by complying with her husband's request without informing her, the appellees committed a deceptive trade practice, violated a fiduciary duty, and breached a contract. She contends that the probate court erred by rendering summary judgment against her. We will affirm the judgment.

### BACKGROUND

In 1995, the decedent, Paul Anton, rolled the funds from his 401k plan into an IRA with Merrill Lynch. Norwood was his financial consultant. According to appellant's affidavit, the

---

[1] The full name of this appellant is Merrill, Lynch, Pierce, Fenner & Smith, Inc. We use the name "Merrill Lynch" because that is how the trial court styled it based on appellant's pleadings.

IRA included $16,800 of her separate property along with an unknown amount of their community property and Paul's separate property; this complicated division was due to their divorce and remarriage to each other. Paul designated appellant the primary beneficiary to receive payment of the balance of his account upon his death. He named his surviving children the contingent beneficiaries if appellant predeceased him.

Appellant also decided to invest with Merrill Lynch and Norwood. She swears in her affidavit that, in developing her investment strategy, she and Norwood included Paul's IRA when discussing her assets.

In December 1996, Paul had a heart transplant. He decided to redesignate the death beneficiaries of his IRA. Alida A. Anton, one of three surviving children, avers that Paul was medicated, delusional, emotionally unstable, belligerent, confused, nonsensical, paranoid, and forgetful after his surgery. She brought the Merrill Lynch redesignation form (filled out by someone else) to him and watched him sign it; she swears he did not understand what he was doing. (Norwood swears that Paul signed the document in the Merrill Lynch office on January 2, 1997.) Appellant avers that she did not learn of the change in beneficiaries of the IRA until Paul died in April 1997.

Appellant sued Merrill Lynch, Norwood, and the three children. Merrill Lynch and Norwood moved for summary judgment, stating eight bases. In her second amended petition, appellant eliminated two of her claims against the appellees (mooting two bases of their motion) and limited her claims against the appellees to breach of fiduciary duty, breach of contract, and DTPA violations. The remaining bases of the motion include the following: that appellant lacked consumer

2

status with respect to the IRA; that appellees had no contract with appellant about the IRA and no fiduciary duty to her with respect to the IRA; and that appellees had the right to rely on Paul's authority to direct the use of the funds in the IRA and an obligation to give effect to the change in beneficiaries as ordered by Paul.[2] The district court granted the motion for summary judgment and severed the claims against Merrill Lynch and Norwood from the claims against the beneficiaries, making the summary judgment final. This appeal followed.

### DISCUSSION

Appellant asserts by her sole point of error that the probate court erred by granting the take nothing summary judgment. She contends that genuine issues of material fact exist regarding the appellees' performance of fiduciary and contractual duties owed to her as an owner of funds in the IRA, as a death beneficiary of the IRA, and as appellees' client. Appellant argues that genuine issues exist about whether the appellees' conduct constituted deceptive trade practices.

Defendants seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *See* Tex. R. Civ. P. 166a(c); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If defendants produce evidence establishing their right to summary judgment, the burden shifts to the plaintiff to present evidence raising a fact issue. *See id.* On appeal, the movants still bear the burden of showing that there is no genuine issue of material fact and that

---

[2] We omit the appellees' argument that they made no representations regarding the IRA to appellant. Under the summary-judgment standard of review, appellant defeated this ground by her affidavit testimony that appellees made representations. *See University of Tex. Health Sci. Ctr. v. Big Train Carpet, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987).

they are entitled to judgment as a matter of law. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We will indulge all reasonable inferences and resolve all doubts in favor of the losing party. *University of Tex. Health Sci. Ctr. v. Big Train Carpet, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987). "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

**Enforcing the rules governing beneficiary changes**

Appellant argues that, as a third-party beneficiary of Paul's IRA, she had a right to ensure that the change in beneficiary designation substantially complied with Merrill Lynch's rules. The custodial agreement governing the IRA states, "You can change your beneficiary designation any time and as often as you wish. Any change of beneficiary, however, must be in writing subject to any rules we may establish and is not effective until we receive it." The instructions for completing the beneficiary form essentially duplicate that language (deleting "subject to any rules we may establish") and add, "You must sign and date your Beneficiary Designation/Change Form in order for it to become effective when delivered to Merrill Lynch." The beneficiary designation form itself contains blanks for the name and address of the primary beneficiary, the share of the fund granted, and the beneficiary's date of birth and social security number. Above the signature line, the form states, "I am aware that this form replaces all prior beneficiary designations for this account, becomes effective when delivered to Merrill Lynch, and will remain in effect until I deliver to Merrill Lynch another form with a later date." The signature line also has space for the date and the daytime telephone number. There are no instructions on the form itself requiring any additional information.

4

Appellant complains that Paul did not comply with Merrill Lynch's rules because he did not supply all the information requested on the form. He redesignated his "surviving children equally" the beneficiaries of a "100%" share. The form lacks their names, addresses, dates of birth, or social security numbers. There is evidence that Paul did none of the writing except for where he signed and dated the form; he did not include his daytime telephone number. Appellant argues that these deficiencies at least create fact questions regarding whether Paul adequately redesignated the beneficiary. Appellant contends that she can enforce Merrill Lynch's rules even if Merrill Lynch chooses not to do so. *See Creighton v. Barnes*, 257 S.W.2d 101, 103 (Tex. 1953).

Appellant cannot enforce Merrill Lynch's rules in this case. First, the evidence does not show rules violations. No rules required that Paul fill all the blanks before signing it. The rules require only that a change be made in writing, signed and dated, and received by Merrill Lynch before it is effective; Paul fulfilled these conditions. Even if rules were violated, appellant cannot enforce rules that Merrill Lynch waived timely. *See Fidelity Union Life Ins. Co. v. Methven*, 346 S.W.2d 797, 800 (Tex. 1961). In *Methven*, the supreme court distinguished *Creighton*, holding that "[p]olicy requirements for effecting a change of beneficiary are primarily for the benefit of the insurer and compliance with them may be waived by the insurer during the lifetime of the insured." The court further wrote:

> When Policy requirements for effecting a change of beneficiary have been waived by the insurer and a change of beneficiary in a manner satisfactory to the insurer and the insured has been completed during the lifetime of the insured, the ousted beneficiary has no legal standing after death of the insured to assert that the change was effected without substantial compliance with policy requirements.

5

*Id.* Merrill Lynch apparently waived any violations and accepted the redesignation because it did not reject the redesignation and distributed the funds to the surviving children. Whether Paul complied with the rules or Merrill Lynch waived any deficiencies, the evidence conclusively shows that the redesignation was effective, at least as to Paul's separate and community share of the IRA funds.[3]

We also reject appellant's argument that the appellees had to ascertain Paul's competence before letting him change beneficiaries. *See Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 545 (Tex. 1998). We express no opinion of the validity of the distribution of funds. We conclude only that Merrill Lynch's rules do not invalidate the redesignation.

**Fiduciary duty**

Appellant contends that the appellees breached their fiduciary duty to her in their role as financial consultants.[4] She argues that her Merrill Lynch accounts made appellees her agents[5] who

---

[3] We are not required to decide and expressly do not decide whether Paul could direct who would receive all of the money in the IRA. *See Prudential Ins. Co. v. Burke*, 614 S.W.2d 847, 849 (Tex. App.—Texarkana 1981, writ ref'd n.r.e.).

[4] She does not claim that they breached their fiduciary duty by allowing the redesignation of beneficiaries. Such argument would be futile under existing precedent. *See Fletcher*, 975 S.W.2d at 545; *Burke*, 614 S.W.2d at 849 (insurer must change beneficiary at insured's direction despite ex-wife/original beneficiary's community interest in policy proceeds), *aff'd*, 621 S.W.2d 596, 597 (Tex. 1981) ("The Court of Civil Appeals has correctly decided the case.").

[5] We are not entirely certain that appellant can raise this argument on appeal. At trial, she argued that Merrill Lynch as trustee owed fiduciary duties to her, a third-party beneficiary of the IRA. Some evidence indicates appellees were appellant's agent. An agent consents to act on behalf of, and subject to the control of, a principal who has manifested consent that the agent shall so act. *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 493 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A broker is an agent hired on commission to negotiate deals for others in matters of trade and commerce. *Robles v. Consolidated Graphics, Inc.*, 965 S.W.2d 552, 557 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). A brochure provided to appellant expressly states that "[w]hen securities are listed on an exchange or when we do not maintain a position in a particular unlisted

6

owed her a fiduciary duty to help her in her financial affairs; she contends that duty required them to tell her of the change in her financial prospects due to the change in beneficiaries.

Our review concerns whether appellees demonstrated that they did not breach a duty to inform her that she would not receive her husband's share[6] of the IRA funds. Appellees argue that they had no duty to tell appellant that she was no longer a beneficiary, relying on *Thompson v. Deloitte & Touche*, 902 S.W.2d 13, 16 (Tex. App.—Houston [1st Dist.] 1995, no writ) (accountants had no duty to inform will beneficiaries of change in will and had duty not to inform them). This case is somewhat distinct from *Thompson* because the decedent in *Thompson* instructed Deloitte & Touche not to disclose the changes to his will, while there is no evidence of such an instruction in this case. *Id.* at 16. Appellant argues that this case is further distinct from *Thompson* because she was the appellees' client, while Thompson was not a client of Deloitte & Touche (aside from tax preparation services provided at the decedent's request). *See id.* at 18.

We are cited to and find no cases or statutes creating a duty to inform an IRA beneficiary that she has been removed; the IRA's rules and general policy concerns weigh against

---

security, we generally will work as your agent to obtain a buyer or seller for you. We add a commission charge to the execution price." Appellees do not point to evidence in the record indicating that they were *not* her agent (perhaps because appellant did not raise this theory below). Though it is unclear whether her trial theory of the fiduciary duty's origin preserves review of the agency-based arguments she makes here, we will review them assuming Merrill Lynch was her agent.

[6] Appellant concedes that some of the IRA funds were Paul's separate property and his share of the community property portion. If some of the funds in the IRA were either appellant's separate or community property, the change in beneficiary did not alter that fact. "The insured may change the beneficiary and if he does his act constitutes a gift of his interest in the policy to the new beneficiary, but it does not affect the first beneficiary's community interest in the proceeds of the policy when payable. In other words, the change of beneficiary is effective only as to the insured's community interest." *Burke*, 614 S.W.2d at 849.

7

establishing such a duty. Imposition of a duty to inform would create great burdens on financial consultants. The chief argument for informing removed beneficiaries is to allow them to restructure their finances in connection with their reduced (or increased) expectancy; the same concerns, however, would require imposing a duty to inform those beneficiaries whose potential benefit is reduced, whether because their share of the account is reduced or the account itself is reduced by withdrawals or declining value of investments. This burden would be offset only by the fact that jilted beneficiaries might know how much money they might receive should their benefactor not renege and should the supporting investments not fluctuate again. Because beneficiaries can be redesignated at any time, so consultants would have to inform a potentially unlimited number of persons of the changing whims of the benefactor. Because we find no existing basis for imposing such a duty and because policy argues against it, we decline to impose a duty here. The appellees had no duty to inform appellant in her role as a beneficiary that she had been removed.

Whether the appellees owed a duty to appellant as their client to inform her that she would no longer receive all the IRA funds after Paul's death is a closer question. Characterizing the appellees as her agents, appellant cites the Restatement of Agency, Second, to describe their duties. Section 381 states that an agent is

> subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person.

8

Under this theory, the IRA is relevant to her finances and her discussions about the IRA with Norwood when establishing her account notified him that she would desire to know that she was no longer the primary death beneficiary of her husband's IRA.

We conclude that appellant seeks to define her agent's duty too broadly. The difficulty with her theory is that the anticipated asset that disappeared was not part of her Merrill Lynch account for which the agency was created. The nature of the relationship between appellant and appellees is not entirely clear; for purposes of this review, we will assume that the appellees were brokers managing a discretionary account and had to meet a higher standard of care than a broker who handles individual transactions at the direction of the client. A federal district court listing the duties of a broker handling discretionary accounts stated that a broker must

> (1) manage the *account* in a manner directly comporting with the needs and objectives of the customer as stated in the authorization papers or as apparent from the customer's investment and trading history; (2) keep informed regarding the changes in the *market* which affect his customer's interest and act responsively to protect those interests; (3) keep his customer informed as to each completed *transaction*; and (4) explain forthrightly the practical impact and potential risks of the *course of dealing* in which the broker is engaged.

*Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951 (E.D. Mich. 1978) (citations omitted, emphases added), *aff'd*, 647 F.2d 165 (6th Cir. 1981); *see also McCoun v. Rea (In re Rea)*, 245 B.R. 77, 90 (Bankr. N. D. Tex. 2000) (outlining duties of Texan who day-traded stocks using adversary plaintiffs' money). Each of the listed duties relates to the funds in the account and investments made with them. None of these duties includes informing the client that she was no longer designated to receive an asset from another client. Though the courts in *Leib* and *McCoun*

9

did not have the added fact of the broker knowing that his client would not receive an expected non-portfolio asset, we conclude that the scope of the appellees' duty to keep appellant informed about her accounts is limited to information about assets in the account and activities related to those assets. Absent evidence to the contrary, the duty does not extend to the client's assets outside the account or to assets that the client anticipates someday will be in her control.

Accordingly, the district court did not err by concluding that none of the alleged breaches—failure to pay her the proceeds of the IRA, failure to notify her that her husband was eliminating her as beneficiary, failure to notify her they intended to pay the children, and paying the children—survives summary judgment.

**Breach of contract**

On appeal, appellant asserts that "[b]y breaching their fiduciary duty owed to Mrs. Anton, appellees additionally breached their contract with her." Because we have found no breach of fiduciary duty, this theory of breach of contract also fails. She does not point to any contractual provision breached by the appellees. The district court did not err by rendering summary judgment against these claims.

**DTPA**

Appellant next contends that the district court erred by granting summary judgment against her claims for DTPA violations. The appellees moved for summary judgment on the basis that appellant was not a consumer with respect to the IRA funds.

Consumer status is a question of law. *Thompson*, 902 S.W.2d at 19. A consumer under the DTPA is someone who "seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4) (West Supp. 2000). "[T]he goods and services in question must form the basis of the plaintiff's complaint." *Thompson*, 902 S.W.2d at 19; *see Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981).

Appellant was not a consumer of Paul's IRA while designated its beneficiary. The undisputed evidence is that Paul was the only person involved in the establishment of the IRA or the designation of death beneficiaries, and that he was the only person with contractual authority to direct the appellees regarding the investment and disbursement of the IRA funds. The appellees were entitled to rely on Paul's authority to manage solely an IRA bearing his name and containing funds rolled over from his 401k plan. *See* Tex. Fam. Code Ann. § 3.104(b) (West 1998); *Thomas v. Rhoades*, 701 S.W.2d 943, 945 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.); *see also* Tex. Fam. Code Ann. § 3.102(a) (West 1998); *Medenco, Inc. v. Myklebust*, 615 S.W.2d 187, 189 (Tex. 1981) ("During marriage, community property employment benefits acquired through employment are subject to the sole management, control and disposition of the employee spouse."). No representations were made to her in the creation or maintenance of the IRA, nor were any required to be made to her as a designated beneficiary.

Appellant's alleged community and separate property interest in some of the funds does not make her a consumer with respect to the IRA. The only evidence is that Paul alone established the IRA. There is no evidence that appellant had anything to do with seeking or acquiring the services incident to the establishment or maintenance of the IRA. Her assertion that funds

11

disbursed from the IRA were hers apart from any death benefit is a quarrel with Paul's estate and his heirs, not these appellees.[7]

Nor does appellant's consumer status with respect to her own accounts give her a DTPA cause of action for the appellees' failure to inform her that she had been removed as the beneficiary of Paul's IRA. She complains that she was not told of the change in beneficiaries of the IRA and her requested relief is that she receive all or some of the IRA funds. The only relationship of her beneficiary status to her accounts is that she alleges she considered the IRA funds when opening her account. She does not allege that she had any discussions or made any investment decisions after January 2, 1997, while under the mistaken belief that she was still a beneficiary; rather, she avers that she never heard from the appellees until after Paul's death. She does not allege that the change in beneficiary affected her personal accounts. Thus, the funds at the center of her claim (the IRA) are not the funds or services for which she contracted (her accounts). To prevail on this theory, she must be a consumer as to the IRA. *See Thompson*, 902 S.W.2d at 19. The undisputed evidence shows that she did not seek or acquire by purchase or lease an expectation in the IRA funds.[8] Because she is not a DTPA consumer of Paul's IRA, the district court did not err by rendering judgment against her DTPA claims.

---

[7] A third person can be held liable for knowingly participating in a breach of fiduciary duty such as a fraud on the community estate of spouses. *Osuna v. Quintana*, 993 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1999, no pet.). We do not find such allegations against appellees in the pleadings.

[8] She may have obtained an interest in some of the funds in the IRA by virtue of her marriage, divorce, and remarriage to Paul. As discussed above, her claim that some of the money in the IRA belonged to her is distinct from her claim that the appellees violated a duty to her while following Paul's directions.

## CONCLUSION

Having found that none of appellant's complaints warrants reversal, we affirm the summary judgment.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed:   January 11, 2001

~~Do Not Publish~~  Released for publication February 15, 2001.  Tex. R. App. P. 47.3(c).