# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00126-CV

**Brian Edward Vodicka and Steven Benton Aubrey, Appellants**

**v.**

**Gregory H. Lahr a/k/a Greg Lahr, both Individually and d/b/a Capital Advantage; Peter Barlin; Sandra Gunn; CFS Associates, Inc. d/b/a Creative Financial Solutions, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-08-004312, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Brian Edward Vodicka and Steven Benton Aubrey appeal from a summary judgment entered in favor of appellees Gregory H. Lahr a/k/a Greg Lahr, both individually and d/b/a Capital Advantage; Peter Barlin; Sandra Gunn; CFS Associates, Inc. d/b/a Creative Financial Solutions (the "brokerage appellees"). We will affirm.

## BACKGROUND

This suit arises out of financial losses Vodicka and Aubrey allegedly suffered as a result of their investments in real-estate-backed loans that they contend were marketed to them as part of a Ponzi scheme. In 2005, Vodicka contacted his acquaintance, Peter Barlin, and inquired about where Vodicka and Aubrey, private investors, could invest some of their money. Barlin referred Vodicka to Gregory Lahr, who lived in a garage apartment on Barlin's property and

worked as a mortgage broker for CFS Associates, Inc. d/b/a Creative Financial Solutions ("CFS"). According to Vodicka and Aubrey, Barlin "was very laudatory of Lahr and his program," but failed to disclose that Barlin would receive money from Lahr if Vodicka and Aubrey invested with CFS and that Lahr had a "shady past" in the private mortgage business. On Barlin's recommendation, Vodicka and Aubrey met with Barlin and Lahr. Lahr told them that, through CFS, they could invest in "hard money" loans, which are short-term, high-interest-rate loans to real-estate investors for which the real estate itself is offered as collateral (i.e., short-term private mortgages). Lahr also told them that they would be represented by attorney Michael Savrick, who prepared some of the documents relating to the investments and who may have simultaneously represented both CFS and some of its investors.

Over the next two years, Vodicka and Aubrey invested their money in multiple loans with CFS, three of which are at issue here: (1) a $120,000 investment purportedly secured by a second lien position against an apartment complex in Temple, Texas; (2) a $915,000 investment secured by junior liens against two tracts of land in Manor, Texas; and (3) a $140,000 investment secured by a junior lien against rental property in Long Beach, California.[1] In 2007, the borrower of the $120,000 for the apartments in Temple defaulted on that loan. A few months later, Barlin allegedly left Vodicka a voicemail stating that Lahr was "not necessarily in many ways the person that I would do business with" because "I've decided to run my business life in a different way, which is in a more simple, sort of more straightforward, honest pattern." Vodicka and Aubrey assert

_____

[1] The three investments that are the subject of this appeal were all documented in Vodicka's name, but it is undisputed that Vodicka and Aubrey funded these investments jointly and each own an undivided one-half interest in them.

2

that, after investing with CFS, they learned that the properties that served as collateral for some of the three loans were worth only a fraction of the value reflected in Lahr's appraisals. They further learned that the borrower of the $915,000 for land in Manor, instead of purchasing the tracts of land he had specified, had used some of the loan proceeds to purchase a wholly different tract of land, in which Vodicka and Aubrey had no security interest.

Ultimately, after allegedly losing at least $1,040,961.00 in these three investments, Vodicka and Aubrey sued Barlin, CFS, and CFS's alleged principals or agents, Lahr and Gunn, for gross negligence, breach of fiduciary duty, common-law fraud, civil conspiracy, and violations of the Texas Securities Act. *See* Tex. Rev. Civ. Stat. arts. 581-33(A)(1)-(2) & (F), -33-1(A) (West 2010).[2] The brokerage appellees moved for partial no-evidence and traditional summary judgment on Vodicka and Aubrey's "negligence-based causes of action," i.e., the gross-negligence claim, asserting that the brokerage appellees owed no duty to Vodicka and Aubrey and that no duty should be imposed in light of the "Texas and federal regimes" already in place to regulate securities. The district court granted the motion.

Vodicka and Aubrey also sued Savrick and his law firm (the attorney defendants) for the same causes of action as the brokerage defendants, and also added, in two separate allegations, that the attorney defendants had committed both "legal malpractice in their representation of [appellants]" and "professional negligence in their representation of [appellants]." The attorney defendants moved for partial summary judgment, contending that the claims for fraud, breach of

---

[2] Vodicka and Aubrey had initially also sued Lisa Caufmann, Mark E. Schiffgens, and Creative Lending Concepts, LLC f/k/a Creative Lending Financial Concepts, LLC, but they nonsuited their claims against these parties.

fiduciary duty, violations of the securities act, and civil conspiracy should be dismissed because the "real claim" against the attorney defendants was for legal malpractice, and allowing these other claims would result in impermissible fracturing of claims. *See Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426-27 (Tex. App.—Austin 2009, no pet.). The attorney defendants also filed a plea to the jurisdiction against Aubrey, asserting that he had no attorney-client relationship with Savrick or Savrick's firm. The district court granted both of the attorney defendants' motions.

In January 2010, roughly one month before the case was set for trial, Vodicka and Aubrey nonsuited their remaining claims (the claims against the brokerage appellees for breach of fiduciary duty, common-law fraud, civil conspiracy, and violations of the Texas Securities Act).[3] The district court therefore signed a final judgment reflecting that the negligence claims against the brokerage appellees and the non-negligence claims against the attorney defendants that had been the subject of the court's orders on partial summary judgments were dismissed with prejudice, while all other claims were dismissed without prejudice based on Vodicka and Aubrey's nonsuits.[4] *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam) ("A nonsuit sought after [a partial summary judgment] results in a dismissal with prejudice as to the issues pronounced in favor of the defendant."). Vodicka and Aubrey appealed, asserting that the district court (1) erred in granting partial summary judgment in favor of the attorney defendants, (2) erred in granting the

[3] *See* 2010 Tex. App. LEXIS 6672, at *1-4 (Tex. App.—Austin, Aug. 13, 2010, order) (denying attorney defendants' motion to dismiss and discussing the effect of Vodicka and Aubrey's nonsuit).

[4] After nonsuiting their claims in the district court, Vodicka and Aubrey filed suit against Barlin, Lahr, Gunn, Schiffgens, Savrick, and Savrick Schumann Johnson McGarr Kaminski & Shirey, LLP, in the United States District Court for the Western District of Texas. *See* Case No. A-10-CA-076-SS.

4

attorney defendants' plea to the jurisdiction against Aubrey "to the extent that the order granting the [plea to the jurisdiction] could have the effect of extending to non-negligence claims against those defendants," and (3) "erred in summarily disposing of Appellants' negligence claims against the [brokerage appellees] based on a no-duty finding." After oral argument, Vodicka and Aubrey filed an unopposed motion to dismiss their appeal as to the attorney defendants, explaining that they have settled their claims against Savrick and his firm. We granted that motion to dismiss. *See* 2012 Tex. App. LEXIS 4029, at *1-2 (Tex. App.—Austin May 17, 2012, order). Therefore, the sole remaining issue on appeal is whether the district court erred in granting summary judgment in favor of the brokerage appellees on Vodicka and Aubrey's negligence claims.

## STANDARD OF REVIEW

The brokerage appellees moved for summary judgment on both no-evidence and traditional grounds under subsections (i) and (c) of rule 166a. When reviewing judgments that might have been granted under either rule 166a(i) or 166a(c), we first review the district court's summary judgment under the no-evidence standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A movant's no-evidence summary-judgment motion must assert that the nonmovant has produced no evidence of one or more essential elements of its claim. *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.—Austin 2002, no pet.); *see* Tex. R. Civ. P. 166a(i). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to produce summary-judgment evidence raising a genuine issue of material fact on the challenged elements. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied) (citing Tex. R. Civ. P. 166a(i)). To

5

raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to the essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). If the plaintiff fails to produce more than a scintilla of evidence of the challenged fact, the motion must be granted, and there is no need to analyze whether the defendant's proof satisfied the rule 166a(c) burden. *Ridgway*, 135 S.W.3d at 600.

To prevail on a motion for traditional summary judgment, a party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. A defendant who moves for summary judgment must disprove at least one essential element of the plaintiff's causes of action. *Duvall*, 82 S.W.3d at 477.

The district court did not state the basis on which it granted the brokerage appellees' summary judgment. Therefore, we must affirm if any of the movants' theories has merit. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004). Because the

propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## DISCUSSION

Vodicka and Aubrey assert that the district court erred in granting summary judgment in favor of the brokerage appellees for two reasons. First, they assert that the brokerage appellees' no-evidence motion was "procedurally inadequate" because it "is wholly conclusory and non-specific, and fails to adequately challenge a specific element of Vodicka and Aubrey's negligence claims." Second, they assert that the brokerage appellees "cannot establish the absence of a negligence duty under the traditional summary judgment standard."

**Specificity of no-evidence motion for summary judgment**

Under rule 166a(i), a motion for no-evidence summary judgment "must state the elements [of a claim] as to which there is no evidence." Tex. R. Civ. P. 166a(i). As the Texas Supreme Court has explained, the "'motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case.'" *Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (quoting Tex. R. Civ. P. 166a(i) Comment—1997). "The underlying purpose of this requirement 'is to provide the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment.'" *Id.* at 311 (quoting *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978)). This purpose is analogous to that of the "fair notice" pleading requirements of Rules 45(b) and 47(a). *Id.*; *see* Tex. R. Civ. P. 45(b)

7

(requiring party's pleadings to give "fair notice" to opponent); Tex. R. Civ. P. 47(a) (requiring plaintiff's pleadings to give "fair notice of the claim involved").

To attack a summary-judgment motion on specificity grounds, the nonmovant must specially except. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous."). The excepting party must obtain a ruling on the special exception to preserve the issue for appeal. *Id.* at 343 n.7; *see* Tex. R. App. P. 33.1(a).

In their response to the brokerage appellees' motion for summary judgment, Vodicka and Aubrey included special exceptions challenging the specificity of the no-evidence motion. However, the record contains no ruling on these special exceptions. Assuming that the trial court should be considered to have denied the special exceptions when it granted summary judgment, we conclude that the motion was sufficiently specific to satisfy rule 166a(i).

The brokerage appellees' motion states, in a section entitled "**NO NEGLIGENCE DUTY**":

> This motion for summary judgment is narrowly focused, and addresses only Plaintiff's claim for relief against Movants under a negligence theory (in fact, Plaintiffs' negligence claims against Movants are all labeled "gross negligence"). **The sole basis for this motion, in turn, is the fact that under the circumstances of this case, no negligence duties were owed by Movants to Plaintiffs.** The existence of a duty is a question of law for the Court to decide from the facts surrounding the circumstances in question. Movants contend that when this Court considers the relevant factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of Movants' conduct, **no negligence duties arise here.** Taking into account the comprehensive Texas and federal regimes regulating securities sales, and the risks inherent in the securities market, negligence liability is inapplicable to this situation. This motion is asserted both as a traditional motion for summary judgment (which assumes for purposes hereof that the facts and

8

circumstances alleged in Plaintiffs' petition are true) and as a no evidence motion for summary judgment, which asserts that Plaintiffs cannot establish facts which warrant the extension of a negligence duty to Movants.

(Emphases added).  As the brokerage appellees indicate, the negligence theory asserted by Vodicka and Aubrey is one for "gross negligence," which "is the breach of duty involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others (an objective element) when the actor has actual awareness of the risk involved but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others (a subjective element)." *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex. 1999).  The assertion that "no negligence duties were owed" by the brokerage appellees to Vodicka and Aubrey unambiguously attacks the essential "duty" element of a claim for gross negligence.  *See City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009) ("As with negligence actions . . . a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty"); *cf. Timpte Indus.*, 286 S.W.3d at 311 (concluding that no-evidence motion for summary judgment gave fair notice that it challenged elements of "unreasonable danger" and "producing cause" where motion stated "Plaintiff has presented no evidence of a design defect which was a producing cause of his personal injury" and "There is no evidence of the product being defective or unreasonably dangerous, and there is no evidence the trailer was the proximate or producing cause of the Plaintiff's injuries"); *In re Mohawk Rubber Co.*, 982 S.W.2d 494, 497-98 (Tex. App.—Texarkana 1998, orig. proceeding) (holding that motion asserting no-evidence of "causation" satisfied rule 166a(i) because "[c]ausation is a specific element of tort liability").

9

Vodicka and Aubrey responded to the no-evidence portion of the motion only by specially excepting and objecting, asking that the no-evidence motion be stricken as "utterly conclusory." On appeal, Vodicka and Aubrey similarly challenge the no-evidence summary judgment only on the ground that it failed to satisfy rule 166a(i)'s specificity requirement. Because we have determined that the no-evidence motion satisfied rule 166a(i), we could overrule appellants' first issue without further explanation, as they have not challenged the no-evidence motion's assertion that there is no evidence of a duty owed by the brokerage defendants. *See Patient Advocates*, 136 S.W.3d at 648. However, because Vodicka and Aubrey asserted in response to the traditional motion for summary judgment that the brokerage appellees owed them duties in negligence, we will address these assertions on the assumption that the portions of Vodicka and Aubrey's summary-judgment response and appellate brief that identify duties owed by the brokerage defendants can be construed as responding to the no-evidence motion for summary judgment. *See* Tex R. Civ. P. 45; Tex. R. App. P. 38.9.

**Alleged negligence duties owed by brokerage appellees**

Vodicka and Aubrey respond to the brokerage appellees' traditional motion for summary judgment[5] by contending that the evidence attached to their response "clearly establishes that the Defendants provided various services to the Plaintiffs and owed the Plaintiffs numerous duties." In their brief on appeal, they identify, again in response only to the traditional motion for

---

[5] Like the brokerage appellees' hybrid motion for summary judgment, the appellants' response is contained in one document, but the response is divided into discrete sections that respond separately to the no-evidence and traditional portions of the motion.

summary judgment, three duties that they contend the brokerage defendants owed them. Even assuming that these contentions respond to the no-evidence motion, we nonetheless conclude that the no-evidence summary judgment should be affirmed because Vodicka and Aubrey have presented no evidence that the brokerage defendants owed them a duty in ordinary negligence.

"Whether a duty exists is a question of law for the court to decide under the facts surrounding the occurrence in question." *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 59 (Tex. 1997). To determine whether a defendant owes a plaintiff a duty, courts balance "several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Kirwan*, 298 S.W.3d at 623-24 (internal quotation marks omitted).

On appeal, Vodicka and Aubrey assert that three duties in negligence are owed to them by various brokerage appellees: (1) CFS, Lahr, and Gunn "owed a duty of reasonable care in their provision of professional services to Vodicka and Aubrey," (2) all the brokerage appellees "had a duty to refrain from negligent misrepresentations," and (3) "Barlin had a duty to exercise reasonable care in recommending Lahr to Vodicka and Aubrey."

As to the first alleged duty, Vodicka and Aubrey assert that there was an "implied" contract between appellants and CFS and that CFS, Lahr, and Gunn were "required, apart from any express contractual obligation, to exercise a reasonable degree of care and competence in the performance of professional services." They then assert that because CFS, Lahr, and Gunn

undertook an affirmative course of action for the benefit of Vodicka and Aubrey, they impliedly promised to perform each of those services in a skilled and acceptable manner and, thus, had a duty to exercise reasonable care that Vodicka and Aubrey would not be harmed in the course of those services.

Vodicka and Aubrey cite *Anton v. Merrill Lynch*, 36 S.W.3d 251, 257-58 (Tex. App.—Austin 2001, pet. denied), and *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 438, 491 (Tex. App.—Houston [14th Dist.] 1994, writ denied), for the proposition that a claim for negligence in the provision of professional services may be brought against securities brokers and agents. The *Anton* opinion does not mention negligence; it discusses duties that federal district courts have concluded are owed under theories of fiduciary duty and concludes that the plaintiff's alleged breaches of fiduciary duty failed to survive summary judgment. 36 S.W.3d at 257-58. In *Hand*, the plaintiff alleged that her stock broker's failure to purchase certain commodity option contracts after she requested that he do so constituted breach of a duty such that the broker's action constituted negligence. *Hand*, 889 S.W.2d at 490-91. The question before the court was whether the broker had a "duty to purchase the options or take necessary steps to purchase the options," because that was the only act of negligence alleged by the appellant. *Id.* at 490 (internal quotation marks omitted). The court concluded that no such duty existed. *Id.* at 495. Neither case directly speaks to whether brokers may be liable for negligently performing professional services. More importantly, neither of these cases supports appellants' proposition that CFS, Lahr, and Gunn had a "duty to exercise reasonable care that Vodicka and Aubrey would not be harmed" in the course of the brokerage appellees' performance of professional services. In fact, Vodicka and Aubrey cite no case, nor have we identified one, that stands for the proposition that brokers owe a duty in common-law negligence to avoid financial harm to their

12

clients. Nonetheless, Vodicka and Aubrey urge that the supreme court has recognized that "a duty to use reasonable care may arise when a person undertakes to provide services to another." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2001). Although the supreme court has acknowledged that such a duty "may arise," they have done so in the context of claims for negligent *undertaking*, a theory under which plaintiffs may recover for "physical harm" resulting from failure to exercise reasonable care in rendering services to another. *Id.*; *see* Restatement (Second) of Torts § 323 (1965). As Vodicka and Aubrey have alleged only economic damages, they cannot recover for a negligent undertaking under *Torrington Co.* See 46 S.W.3d at 837.

Vodicka and Aubrey further urge that CFS, Lahr, and Gunn owe a duty because "[a] party contracting to supply services owes a common-law duty to perform the services with reasonable care, skill, expedience, and faithfulness." *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ) (citing *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (1947)). Vodicka and Aubrey's live petition did not assert any duty owed by the brokerage defendants, but their response to the traditional motion for summary judgment essentially asserts that (1) the brokerage appellees agreed to exercise due diligence in investing appellants' money, and (2) the brokerage appellees failed to perform adequate due diligence, resulting in appellants' financial losses. Taking as true appellants' assertions that CFS, Lahr, and Gunn agreed to perform due diligence regarding appellants' investments, CFS, Lahr and Gunn could be held liable in negligence only if any alleged breach of their duty to perform due diligence "would give rise to liability independent of the fact that a contract exists between the parties." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *id.* at 495 ("When the injury is only the economic loss

13

to the subject of a contract itself the action sounds in contract alone."). Conversely, where failure to perform due diligence gives rise to liability because the failure to perform violates an agreement between the parties, then the plaintiffs' action sounds in contract alone unless the breach has resulted in physical harm to persons and tangible things. *Id.* at 494-95 & n.2. Because Vodicka and Aubrey identify no due-diligence duty that CFS, Lahr, and Gunn would have owed to them in the absence of the alleged "implied contract," and because the sole harm was economic loss resulting from the investments that were the subject of that contract, appellants cannot recover in negligence for a breach of this duty.[6]

Similarly, the second duty alleged by Vodicka and Aubrey—that all of the brokerage defendants owed them a "duty to refrain from negligent misrepresentations"—does not fall within the parameters of an ordinary negligence claim; instead, this alleged duty impermissibly recasts a possible negligent misrepresentation claim under a different appellation. Vodicka and Aubrey state on appeal that they "pled the elements of negligent misrepresentation," and that their alleged facts, taken as true, establish that those elements were met. *See* Restatement (Second) of Torts § 552 (1977) (defining negligent misrepresentation).[7] They then conclude that they therefore established

---

[6] Appellants' brief goes on to assert that CFS and Lahr made various false representations to appellants, such that they should be "held to the higher fiduciary standard," but, "at the very least" owed Vodicka and Aubrey "a duty of ordinary care." The brief provides no authority for the assertion that these false representations support a claim for ordinary negligence. We determine that appellants are attempting to recast possible claims for fraud, breach of fiduciary duty, or negligent misrepresentation as claims for (or duties arising in) ordinary negligence. Because appellants did not argue at the district court that these claims precluded summary judgment, they have waived these arguments. *See* Tex. R. Civ. P. 166a(c).

[7] Section 552 states:

14

the existence of a "negligence duty."

The brokerage appellees respond that Vodicka and Aubrey did not, in fact, assert a claim for negligent misrepresentation against any defendant in the district court,[8] and have consequently waived this argument. We agree. We acknowledge that the first 48 pages of the petition allege numerous facts, some of which might support elements of a claim for negligent misrepresentation. But nowhere in the facts or in the following eleven pages in which appellants list seven causes of action, their damages, and their prayer for relief, do they assert a claim for negligent misrepresentation "in plain and concise language" or in a manner that would give "fair notice of

(1)  One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2)  Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

    (a)  by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

    (b)  through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3)  The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

[8] As noted above, Vodicka and Aubrey asserted an ordinary negligence claim against the attorney defendants (but not the brokerage appellees), and they asserted a gross negligence claim against all "Defendants."

the claim involved." *See* Tex. R. Civ. P. 45, 47. Nor does Vodicka and Aubrey's response to the brokerage appellees' motion for summary judgment articulate that appellants had intended to plead negligent misrepresentation. Instead, that response summarizes evidence that is attached to the motion and concludes that the evidence established "numerous duties," then appears to assert only that the brokerage appellees breached a duty to perform "due diligence" to prevent injury to appellants and that Barlin breached a duty by referring the appellants to Lahr. As far as we can discern from the record, the first mention of "negligent misrepresentation"—either as a separate cause of action or as an alleged duty owed in ordinary negligence—occurred on appeal. We therefore decline to address appellants' theory that claims for negligent misrepresentation constitute a negligence duty. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

Finally, Vodicka and Aubrey allege that Barlin had a duty to use reasonable care in recommending Lahr because Barlin "knew or should have known" that Lahr was likely to commit intentional misconduct. In asserting the existence of this duty, Vodicka and Aubrey do not address the balancing test espoused by the supreme court. *See Kirwan*, 298 S.W.3d at 623-24. Instead, they rely on the general argument that the facts of this case "clearly indicate that the Brokerage Defendants had *some* duty to prevent the harm that befell Vodicka and Aubrey, whether under the state and federal securities regimes as the motion alludes, or under the common law governing fraud, fiduciary duty, or reasonable care." Vodicka and Aubrey premise all of their arguments regarding alleged duties on the assertion that the brokerage appellees were "deliberately fraudulent and/or disloyal" or "at least" negligent, but appellants do not explain why the duties they have alleged

16

should be recognized as duties in negligence with reference to the factors that we consider. Barlin responds that he owed no duty to Vodicka and Aubrey in negligence and that no duty should be imposed because the investments at issue in this case are securities that are regulated by "a pervasive statutory scheme." *See* Tex. Rev. Civ. Stat. art. 581-1 et seq. (West 2010 & Supp. 2011); *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 386 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (declining to create negligence cause of action where plaintiffs sued for violations of the Texas Securities Act because (1) "there is a comprehensive regime regulating the issuance and sale of securities, which argues against the need to extend tort liability to these situations"; (2) "the application of tort liability is ill-suited to an arena where downside risk is a feature inherent in the concept of the securities market"; and (3) "adopting this suggested 'strict liability' approach would be destructive to this area of commerce"); *see also Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) (stating that absent special relationship, there is generally no duty to protect individual from criminal acts by third party); *San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 318-19 (Tex. App.—Corpus Christi 2000, no pet.) (discussing "general rule of no duty" and exceptions).

Vodicka and Aubrey cite *Golden Spread Council, Inc. v. Akins* to support their assertion that Barlin's alleged "duty to exercise reasonable care in recommending Lahr to Vodicka and Aubrey" already exists. 926 S.W.2d 287, 290-91 (Tex. 1996). Rather than adopting a general rule that there exists a "duty to use reasonable care before recommending a person" who is particularly likely to commit intentional misconduct, the supreme court in *Akins* weighed "the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the

17

magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Id.* After balancing those factors, the supreme court recognized that a defendant organization had a limited duty to use ordinary care in referring a person to a Boy Scout troop that was seeking a new scout master when the referring organization was aware that the person had allegedly molested boys in the past. *Id.* Notably, *Akins* involved potential contact with particularly vulnerable individuals, and the determination that a duty existed was based, in part, on "a strong policy to protect children from abuse." 926 S.W.2d at 291; *cf. Read v. Scott Fetzer Co.*, 990 S.W.2d 732 (Tex. 1998) (imposing duty on vacuum manufacturer to check background of contractor it hired to demonstrate products in potential customers' private homes); *Porter v. Nemir*, 900 S.W.2d 376 (Tex. App.—Austin 1995, no writ) (imposing duty where a psychologically fragile victim was sexually assaulted by a drug counselor). Vodicka and Aubrey do not explain why courts should create a duty in ordinary negligence to protect adults who are not members of a vulnerable class from economic harm.[9] And, the sole evidence they presented with their summary-judgment motion as to how or why Barlin "knew or should have known" that Lahr was likely to commit intentional misconduct was their counsel's assertion in a deposition that Barlin left Vodicka a voicemail stating that Lahr was "not necessarily in many ways the person that I would do business with" because "I've decided to run my business life in a different way, which is in a more simple, sort of more straightforward, honest pattern."[10] Barlin responded to that assertion by stating "I think I'm saying

[9] The summary-judgment evidence reflects that Vodicka was or had been a CPA and attorney.

[10] In their brief, Vodicka and Aubrey describe Lahr's past companies, which, they allege, were also "Ponzi-esque," but they introduced no evidence showing that Barlin knew or should have known about any of Lahr's former companies or business practices, nor do they even argue that Barlin was aware of any particular past activities of Lahr. Instead, they argue that Barlin knew of

18

that the hard money lending business is a tough business. . . . when you lend people in the hard money business, it's assumed that things are going to go bad, that you're going to have to take people's properties from them, that there's going to be lawsuits."  In the remainder of his response to counsel's assertion and in response to follow-up questions, there was no testimony regarding his knowledge of any of Lahr's past acts.  Nor is there any mention of Barlin's knowledge of Lahr's past misconduct or any evidence that he should have had such knowledge in the remaining summary-judgment evidence.  Vodicka and Aubrey's assertions regarding the meaning of Barlin's alleged comments in a voicemail do no more than create a mere surmise or suspicion; these assertions do not constitute "more than a scintilla of probative evidence," and, as such, they are no evidence. *See Jackson*, 979 S.W.2d at 70.  Because Vodicka and Aubrey have presented no arguments in the district court or on appeal as to how the risk, foreseeability, and likelihood of injury to them outweigh the social utility of obtaining recommendations for brokers, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on Barlin, we decline to create a new common-law duty of reasonable care in recommending brokers to potential investors where there is no evidence that the recommender knew or should have known of alleged past

---

Lahr's "proclivities to swindle investors" and the "imminent risk that Lahr would ply his investment scams on Vodicka and Aubrey," without identifying the basis for these assertions.  In the statement of facts contained in their brief, they assert that Barlin began to "warn" Vodicka and Aubrey about Lahr in 2008, three years after introducing them to Lahr.  They base this statement on allegations in their second amended petition, which was filed after the summary judgment was granted, but before Vodicka and Aubrey nonsuited their remaining claims.  These allegations do not constitute legally sufficient evidence to survive the brokerage appellees' no-evidence motion for summary judgment. We note that these same allegations appear in exhibit 37 to the live petition.  However, exhibit 37 is a twelve-page document authored by Vodicka and Aubrey in response to Barlin's interrogatories. As such, it cannot be used against Barlin. *See* Tex. R. Civ. P. 197.3 ("Answers to interrogatories may be used only against the responding party.").

19

misconduct. *See J.P. Morgan Chase Bank v. Texas Contract Carpet, Inc.*, 302 S.W.3d 515, 535 (Tex. App.—Austin 2009, no pet.) (stating that intermediate appellate courts should be reluctant to recognize new common-law duty (citing *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002))). "The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed." *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). Accordingly, we overrule appellants' issue.

## CONCLUSION

Having overruled the sole remaining issue on appeal, we affirm the district court's summary judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Goodwin

Affirmed

Filed:  June 6, 2012

20